# Richmond.

## Tunis Lumber Co. v. R. G. Dennis Lumber Co.

### December 7, 1899.

1. LANDLORD AND TENANT—*Fixtures—Agreement of Parties.*—Parties may, by agreement, fix the character and control the disposition of property which, in the absence of such agreement, would be held to be a fixture, if no absurdity, or general inconvenience will result from the transaction.

2. LANDLORD AND TENANT—*Fixtures—Buildings Erected by Tenant Pursuant to Covenant.*—Buildings erected by a tenant on the leased premises, pursuant to a covenant in the lease which obliges him to erect them, are not removable as trade fixtures, unless the right of removal is expressly or impliedly reserved in the lease.

3. LANDLORD AND TENANT—*Fixtures—Buildings Voluntarily Erected by Tenant.*—Between landlord and tenant it is an essential element of removable structures that they be erected by the tenant of his own volition, and for his own benefit, intending that they should remain his property, and not in fulfilment of a duty or obligation owing by him to the lessor.

4. LANDLORD AND TENANT—*Fixtures—Buildings Voluntarily Erected by Tenant.*—Whether or not a structure erected by a tenant on the leased premises is a trade fixture, is, in the absence of any duty or obligation on the part of the lessee to erect it, a question of fact to be determined by the jury under proper instructions from the court.

5. APPEAL AND ERROR—*Objections to Evidence—Failure to Take Bill of Exception.*—The action of the trial court in permitting evidence to be introduced which is objected to is not subject to review in this court, in the absence of a bill of exception to the ruling of the court.

Error to a judgment of the Circuit Court of Nansemond county, rendered November 9, 1898, in an action of trespass on

the case wherein the plaintiff in error was the plaintiff, and the defendants in error, who were doing business under the name of R. G. Dennis Lumber Company, were the defendants

*Reversed.*

The opinion states the case.

*Edward R. Baird, Jr.,* for the plaintiff in error.

*E. E. Holland,* for the defendants in error.

Buchanan, J., delivered the opinion of the court.

In the latter part of the year 1894 the plaintiff in error and one Henry Servoss entered into an agreement by which the former leased to the latter a saw-mill plant and other property used therewith. On the 1st of December following, Servoss assigned one-half of his interest in the lease to R. E. Briggs, and they formed a co-partnership under the firm name and style of the Chowan Lumber Company. This firm operated the leased property until some time in the year 1896, when they failed in business, and their assets were taken possession of and sold under the decrees of the Superior Court of Hertford county, North Carolina. At that sale, which was made in January, and confirmed in April, 1897, the defendants, the R. G. Dennis Lumber Company, became the purchasers of the rights of the Chowan Lumber Company in the lease and their property on the leased premises, subject to a lien for materials furnished to that company. In July following, the defendants removed, among other things, the piping and machinery in three dry kilns built upon the leased premises by the Chowan Lumber Company. The plaintiff in error denied the right of the defendants to make such removal, and brought this action to recover damages therefor.

Upon the trial of the cause, there was a verdict and judgment in favor of the defendants, and to that judgment this writ of error was awarded.

The principal error assigned is the action of the Circuit Court in refusing to give instruction No. 5 offered by the plaintiff, and in giving its own instruction numbered 11 in lieu thereof. By the rejected instruction the court was asked to tell the jury that, by the terms of the lease, it became the duty of the lessee to erect on the leased premises " two improved Servoss dry kilns," and that when they were erected they became the property of the lessor, and that the defendants who had purchased the lease acquired no right by their purchase to remove the dry kilns or any part thereof; and that if a third dry kiln was erected upon the leased premises, in the absence of any agreement to the contrary, it became the property of the plaintiff, and could not be removed by the defendants.

In lieu of that instruction the court instructed the jury as follows:

" 11. The court instructs the jury that by the terms of the lease of the Tunis Lumber Company to H. S. Servoss (tenant), the said tenant, while under obligation to erect two ' improved dry kilns,' and have the same in operation not later than January 31, 1895, was only under obligation to surrender the premises at the expiration of the lease in as good repair and condition as they were when received, ordinary wear and tear and losses by the elements excepted, and if the jury believe from the evidence that such dry kilns or other additions, machinery or improvements, were put there by the tenant for the better temporary use of the realty by himself, then, he was not under any obligation to surrender such dry kilns or any other improvements, or machinery, thus put by him upon the premises, to the Tunis Lumber Company, unless they were so permanently affixed to the realty that they could not be removed without injury to the premises; that (if they so believe from the evidence) such improvements and additions to the machinery remained the property of the tenant as trade fixtures, and he had the legal right

to remove the same during the term, provided such removal did no injury to the premises; that if they further believe from the evidence that the rights of the said Servoss (tenant) under such lease were assigned ultimately to the defendants, and that they assumed the obligation of such tenant, then the defendants had the legal right during the term to remove the pipes and other machinery and improvements upon the premises which were put there by the said tenant or his assigns, provided such removal was so accomplished as to do no injury to the premises and the property of the plaintiff."

By the terms of the lease which was construed by the court, the lessor on his part rented to the lessee "all the dwelling-houses, stables, shops, storehouse and other buildings, together with the lots of land connected therewith, enclosed or staked off, the saw mills and belting and machinery thereon and appertaining thereto, the boilers, engine, &c., for running the trimmer and dry-kiln plant; the wharves and lumber yard, and the tug-boat 'Albert,' all located at Tunis, in the county of Hertford, and State of North Carolina, for the term of one year from the 1st day of January, 1895, and bound himself at the expiration of that year to renew the lease for four years more upon the same terms and conditions, if the lessee desired it. The lessor also agreed to keep the saw mills, machinery, and buildings insured for $2,500 or more, and the tug-boat insured for $1,000 or more, and in the event of the destruction of the insured property to replace it to the extent of the insurance, if the lessee should desire it.

In consideration of these undertakings on the part of the lessor the lessee agreed to pay the sum of $1,200 per year for the rent of the property, payable in four equal quarterly payments in advance, on the first days of January, April, July, and October, respectively, except the first quarterly payment, which was to be made and was made at the time the lease was executed, and in consideration of which (first) payment the lessee was entitled

to the immediate possession of the leased property for the pur-
pose of making repairs and improvements; second, " to keep the
above named property in as good condition and repair as it now
is, and to return the same to the first party at the expiration of
this lease in as good repair and condition as it is now, ordinary
wear and tear and losses by the elements excepted "; and, third,
" to erect on the said property two improved Servoss dry kilns,
and to have the same in operation not later than January 31,
1895."

If it were conceded that, in the absence of any agreement upon
the subject, the dry kilns were trade fixtures, and that they were
removable during the term by the tenant, how is that right or
privilege affected by the provisions of the lease?

It is well settled that by agreement the parties may fix the
character and control the disposition of property, which, in the
absence of such a contract, would be held to be a fixture, where no
absurdity or general inconvenience would result from the trans-
action. 2 Woodfall Land. & Tenant, 637 (1 Am. Ed. from 13th
Eng. Ed.); 3 Wait's Actions & Defences, p. 372, sec. 4; Taylor's
Land. & Tenant, sec. 554; Wood's Land. & Tenant, sec. 531.

The general rule is that buildings erected by the tenant on
the leased premises, pursuant to a covenant in the lease, are not
removable as trade fixtures unless the lease expressly or impliedly
reserves to the lessee the right to remove them. *Peirce* v. *Grice*,
92 Va. 763; *Deane* v. *Hutchinson*, 40 N. Y. Eq. 83. See, also,
*Gett* v. *McManus*, 47 Cal. 56; *Mayor, &c.* v. *Brooklyn Fire Ins.
Co.*, 41 Barb. 231; *Same* v. *Hamilton Ins. Co.*, 4 Bosworth 537.

It is said to be an essential quality of all removable erections
that they shall have been made under such circumstances as
show that the tenant made them of his own volition and for his
own benefit, intending that they should remain his property, and
not in fulfilment of a duty or obligation which he owed the
lessor. *Deane* v. *Hutchinson, supra;* Ewell on Fixtures, pp.
88-9.

Two of the dry kilns were erected by the tenant pursuant to his undertaking in the lease, which undertaking was manifestly for the benefit of the lessor, and not for his own benefit, for without any such stipulation he could have erected them. He was bound to erect them. He had no choice in the matter. His agreement to do so was as much a part of the consideration for the rights which he acquired under the lease as was his promise to pay the stipulated rent.

If, as was said in the case of *Deane* v. *Hutchinson, supra,* in discussing a similar provision in a lease, " the covenant had been that the lessees, instead of erecting the building themselves, should furnish to the lessor the money necessary for that purpose and the money had been furnished, and the building erected, in that condition of affairs the intention of the parties to incorporate the buildings into the land, and to make it an inseparable part of the land, might have been slightly more conspicuous than it is in the covenant under consideration, yet the two covenants are so identical in all their essential parts, that in my judgment it would be impossible to give them different constructions on the point under consideration."

If the lessor had erected them himself with money furnished by the lessee, would it be contended for a moment that the lessee had the right to remove them, because in a prior provision of the lease he had only agreed to return the leased property in as good repair and condition as it was when the lease was executed?

To hold that the dry kilns were not to be returned to the lessor along with the leased premises at the expiration of the lease would practically annul the provision which required the lessee to erect them. Of what value would they be to the lessor if the lessee had the right to remove them?

It is contended that the object of the provision for the erection of the dry kilns was to secure a tenant for the full term of five years, since the lessee would not be likely to leave after erecting such costly structures until after the expiration of that period;

and also to furnish additional security for the payment of the rent. There is nothing in the lease to show that the provision was inserted for any such purpose. The lessee had the right to terminate the lease at the end of the first year, either because the business for which he had leased the property was not profitable, or without cause; and under the defendant's contention he could have removed the dry kilns the day after they were built, and thus have defeated the very purposes for which it is claimed the provision was inserted, and the lessor would have been powerless to prevent it. In the absence of any such intention, the court will not construe a provision made for the benefit of the lessor in such a way as to enable the lessee to render the provision of no value, if any other reasonable construction can be given it.

When all the provisions of the lease are considered together, as they must be, the only reasonable construction that can be placed upon the provision in question is that the dry kilns were to be erected in the place of those which had been burned down, and as a part of the dry-kiln plant mentioned in the lease for the benefit of the lessee during his term, and then to be surrendered as a part of the leased plant.

It follows from what has been said that we are of opinion that the Circuit Court did not correctly construe the lease as to the right of the defendant to remove the two dry kilns provided for in the lease, and to that extent its instruction No. 11 is erroneous; but in so far as that instruction applied to the other dry kiln erected by the tenant, not in pursuance of any requirement of the lease, but of his own choice and for his own benefit, it was not prejudicial to the plaintiff's rights.

The plaintiff's instruction No. 5, in lieu of which the court's instruction No. 11 was given, was also erroneous. It correctly construed the lease as to the rights of the parties in the two dry kilns which the lessee had bound himself to erect, but it was plainly erroneous in so far as it declared, as a matter of law, that

the defendants had no right to remove the third dry kiln unless there was an agreement that they might do so. Whether or not that kiln was a trade fixture under the evidence in the cause, was a question for the jury under proper instructions.

The action of the court as to the introduction of certain evidence is also assigned as error, but as no bills of exception were taken to the rulings of the court that assignment of error cannot be considered.

The judgment complained of must be reversed, the verdict set aside, and the cause remanded to the Circuit Court for further proceedings to be had, not in conflict with this opinion.

*Reversed.*