E. W. WORRELL et al. v. D. M. KLEIN

(No. 5315.)

Submitted March 9, 1926.   Decided March 23, 1926.

LANDLORD AND TENANT—*Covenant by Lessee to Return Premises In As Good Condition As When First Possessed Renders Him Liable to Landlord for Injuries to Reversion Due to His Negligence; Where Lessee Vacated Part of Building Rendered Untenantable by Fire for Which he Was Not Responsible and Landlord Re-entered Such Part to Repair it, he Could Not Recover From Lessee Damages for Subsequent Injuries From Action of Elements to Part of Premises Re-entered (Code, C. 72, § 22).*

While a covenant on the part of a lessee to return the leased premises in as good condition as when first possessed by him renders him liable to the landlord for injuries to the reversion due to his negligence, where the lessee has vacated a part of the building because rendered untenantable by a fire for which he was in no way responsible, and the landlord has re-entered and taken possession of such part to repair the same, and reduced the rental until such repairs are completed, the landlord cannot recover from the lessee damages for subsequent injuries caused by action of the elements to the part of the premises so re-entered.

HATCHER, JUDGE, absent.

(Landlord and Tenant, 36 C. J. § 862.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Wyoming County.

Action by E. W. Worrell and others against D. M. Klein. Judgment for plaintiffs, and defendant brings error.

*Judgment reversed; verdict set aside; case remanded.*

J. Albert Toler, for plaintiff in error.

MILLER, JUDGE:

This is an action by the landlord to recover damages for injuries to the leased premises alleged to have resulted from

the negligence of the tenant. From a verdict and judgment in the sum expended by the plaintiff to repair his property, the defendant prosecutes the present writ of error.

In the declaration the plaintiff alleges that by the terms of the written lease the defendant agreed ''to turn over said building to the first parties or their assigns at the end of this lease in as good condition as when first possessed by said second party, ordinary wear and tear excepted;'' that while in possession of the building and lot covered by the lease, the defendant carelessly and negligently allowed the plumbing and heating appliances in the building to freeze and burst; that said injuries to the property were due entirely to the negligence, carelessness and wilful misconduct of the defendant, and could have been avoided by the exercise of due diligence on his part; and that though often requested to do so, the defendant failed, neglected and refused to repair the said heating equipment, in violation of his contract of lease.

The defendant occupied the first floor of the two-story building covered by the lease for business purposes, and the second floor as a residence. About November 10, 1923, a fire of unknown origin so damaged the second story of the building that it was rendered wholly unfit for occupancy, and the defendant vacated that part of the building until it could be repaired, but continued to use the first floor rooms for business purposes as before. On the night of January 10, 1924, the hot water radiators and other plumbing on the upper floor froze and burst, causing the damage sued for.

It is not alleged or claimed that defendant was in any way responsible for the fire; and the plaintiff relies for recovery wholly on the provision of the lease requiring the defendant to return the property at the end of the tenancy in as good condition as when first possessed by him. From the record before us it appears that right of recovery under the evidence must depend upon whether or not, at the time of the freezing, the property was in the possession of the defendant or had been re-entered and taken possession of by the plaintiff for the purpose of repair.

Immediately after the fire the plaintiff entered into negotiations with the fire insurance companies with whom he car-

ried insurance on the building, to adjust his loss with them, and at the instance of the companies' adjuster, the roof, or sky-light, was repaired or covered temporarily. At some time, whether before or after the freezing does not clearly appear, the plaintiff had the windows boarded up, though there is evidence that they were open at the time the radiators froze. When the plaintiff began repairs is not shown; but he testified on the trial that he had then restored the building to its original condition. The contractor who, a few days after the fire, made an estimate of the loss, testified that he told plaintiff it would take something like sixty days to repair the building, and that the windows could have been replaced in two weeks. The estimated loss was $5,100.00, and plaintiff settled with the insurance companies for $4,850.00.

It appears that the lease under which the defendant held would not have expired until September 1, 1926; but some time early in the year 1924, the parties entered into negotiations for a new lease, for a term of three years, to take effect as of January 1, 1924. The original lease provided for a monthly rental of $250.00; and the new one for $250.00 per month for the year 1924, $275.00 for 1925, and $300.00 for 1926. Another provision of the new contract was: "The upper or second floor of said building now being in an untenantable condition it is agreed that the rent for said building shall be $175.00 per month until the second floor is repaired and made tenantable, and from and after that time for the remainder of 1924 the rent shall be as above provided." Plaintiff insists that another agreement, a draft of which he submitted to defendant along with the lease contract, to secure to him an easement for a stairway over defendant's lot adjoining the building in question, was a part of the consideration for the new lease. Defendant signed the lease and returned it to plaintiff, with a letter dated February 18, 1924, in which he said: "The step agreement which you have drawn is not satisfactory, and I am returning same to you." Later, however, plaintiff accepted and signed the lease without requiring defendant to execute the easement agreement.

At the instance of the plaintiff the court instructed the jury that where the contract provides that the tenant will at

the termination of the lease turn over the leased premises in as good order as when first possessed by him, ordinary wear and tear excepted, his failure to do so gives the landlord right of action for all damages sustained by reason of the tenant's failure to keep such premises in repair according to the terms of the lease; and that if the jury believed from the evidence that the defendant negligently or wilfully failed to take the necessary precautions to protect the leased property, and by reason of such failure or neglect the plumbing and radiation was frozen and burst, they should find for the plaintiff in such sum as the evidence showed the leased premises were damaged.

This instruction assumes that the defendant was, at the time of the freezing, still in possession, or at least that he had control and care of the whole of the leased building. It made him liable in damages although the plaintiff at the time may have had complete possession and control of that part of the building where the radiators were located, for the purpose of repairing the damage done by the fire. The defendant was not in actual possession of the second story of the building; and it appears that the plaintiff had made all arrangements to repair, whether or not the actual work of reconstruction had begun. Defendant did not abandon the premises; he left with full knowledge of the plaintiff, because the living apartment was untenantable at the time, made so without fault on his part. And it appears that the monthly rental had been reduced until the part of the building injured by the fire could be restored to a tenantable condition. The new lease, which was to take effect as of January 1, 1924, whenever it may have been finally executed, also provided for such reduction in rent. It seems to be admitted that the damages sued for were the result of the condition left by the fire. Our statute, section 22, chapter 72 of the Code, provides: "No covenant or promise by a lessee that he will leave the premises in good repair shall have the effect, if the buildings are destroyed by fire or otherwise, without fault or negligence on his part, of binding him to erect such buildings again, or to pay for the same or any part thereof, unless there be other words showing it to be the intention of the parties that he

should be so bound." Plaintiff could not hold defendant liable for the damages caused by the fire, in the absence of negligence on the part of the latter, and does not claim that defendant was under a duty to repair the injury caused thereby, only that it was his duty to protect the plumbing on the second floor.

In *Mercantile Company* v. *Thurmond*, 68 W. Va. 530, 536, it is said that the general rule requiring the tenant, in the absence of express agreement, to make repairs of the leased .premises, is based on the principle that during the continuance of the lease the landlord has no right of entry. But here the tenant claims that the landlord had right of entry, and had entered the premises for the very purpose of making repairs which the tenant was not bound by law to make. And where the landlord has possession and control of a part of the premises, he is under a duty to keep such part in repair so as not to do injury to his tenant or the public. *Mercantile Company* v. *Thurmond, supra,* and cases cited. The instruction complained of wholly ignored this theory of the case, and told the jury in effect that it was the duty of the defendant to take all necessary precautions to protect that part of the leased premises where the injuries complained of occurred, not that he was under a duty to do so if he was still in control of that part of the building. This question of fact should have been submitted to the jury.

For the error above referred to, the judgment will be reversed, the verdict of the jury set aside, and the case remanded for a new trial.

*Judgment reversed; verdict set aside; case remanded.*