## Cass et al. v. Home Tobacco Warehouse Co.

October 4, 1949.

Shumate & Shumate, Geo. C. Robbins and L. Marion Oliver for appellants.

Geo. T. Ross and J. J. Greenleaf for appellee.

CHIEF JUSTICE SIMS—Reversing on appeal, affirming on cross-appeal.

By this appeal Owen Cass and A. M. Hiatt, partners doing business as Cass & Hiatt, seek to reverse a judgment for $1,400 obtained against them by the Home Tobacco Warehouse Company, hereinafter referred to as the Company, for damages done its property when the partners had a filling station building demolished and pumps and tanks removed therefrom when the leased property was surrendered to the owner. Appellants insist the court erred in giving what amounted to a directed verdict in favor of the Company and that they were entitled to a directed verdict. On its cross-appeal the Company complains of the court's refusal to give an instruction offered on punitive damages.

The Company owned a lot on the east side of North Second Street in Richmond upon which there was a residence, garden, barn and filling station. By a writing dated July 14, 1936, it rented the entire property to Gilbert Parke and Jennings Harris for a term of five years from Jan. 1, 1937. The contract gave the lessees the

right to extend the lease for an additional five year term by giving lessor written notice six months before the expiration of the first five year term on Jan. 1, 1942. The lease contract further provided, "all buildings and fixtures erected and placed on said property by lessees shall be their absolute property and they have the right to remove same." Lessees were given possession of the filling station the day the lease was executed and were to pay $10 per month for it until Jan. 1, 1937, when they got possession of the entire property for a monthly rental of $40. W. E. Luxon, president of appellee, signed the lease it executed and handled the property for the Company.

On Sept. 30, 1936, Parke & Harris entered into a written contract with appellants, who were distributing agents for the Gulf Refining Company, to handle Gulf products for the ten year term of the lease in consideration of appellants erecting a filling station building on the property at a cost of $667.50; and at the expiration of the lease the building was to be the property of appellants. The original lease between the Company and Parke & Harris was made a part of the contract between the latter and appellants.

On Sept. 14, 1938, Parke & Harris by an endorsement upon the copy of the lease they had with the Company undertook to assign it to E. C. Hill, who in the same manner on Oct. 2, 1939, attempted to assign it to Ray Wilson. Neither the Company nor Luxon had any notice of nor consented to these purported assignments when made. But it appears that Luxon accepted the assignees and recognized them as tenants, thus they became assignees of the lease and not sub-tenants. Entroth Shoe Co. v. Johnson, 260 Ky. 309, 85 S. W. 2d 686. Also see 32 Am. Jur., "Landlord & Tenant," sec. 341, p. 303. Wilson occupied the property from Oct. 2, 1939, until April 6, 1943, when Kay Golden rented the filling station from him and remained in possession of it until the latter part of December 1946. Wilson testified he never gave the six months notice required by the lease to extend it for another term of five years, but that Luxon never menioned the expiration of the lease to him until a year after it had expired. At that time he asked Luxon about the lease having expired and the latter said: "You are there, what are you worrying

about?'' Golden testified Luxon told him to get his stuff out by Jan. 1, 1947, as he desired the place for a bulk distribution plant and would want to do some grading. Golden further testified Luxon had refused to make repairs on the filling station while he was on the property and that appellants made the big repairs and witness made the small ones.

Luxon's testimony is that he took possession of the property on Jan. 1, 1942, when the lease expired, as no notice of the lessee's intention of renewing it was given him six months before that date. His testimony contradicts that of Wilson, who testified that he remained on the property until more than a year after the date of expiration on Jan. 1, 1942, and that Luxon said nothing to him about the lease expiring for more than a year after that date and then told him he was on the property and not to worry. Also Luxon's testimony contradicts that of Golden, who testified Luxon said he wanted to grade this particular lot when he told Golden to move his stuff. Luxon's testimony is that he told Golden he wanted to grade the property other than where the filling station was located. Hiatt addressed a letter to Luxon on Sept. 20, 1945, relative to building a new filling station on the property and testified he saw Luxon relative to leasing the filling station after the expiration of the lease under which he then claimed. Luxon testified this letter, as well as the conversation he had with Hiatt, related to Hiatt's obtaining a lease on the filling station in 1945, and nothing was said about the first lease as it had already expired. True, the uncontradicted fact that Luxon doubled Golden's rent in 1946 is strongly indicative that Golden was not holding under the original lease. However, Golden explains that he was going to move before the first of January 1947 and appellants advised him not to object to the raise.

It is provided in KRS 383.160 that where the lease is for a term of a year or more and after the expiration thereof the tenant holds over for ninety days, the lease is renewed for a year from the date the lease expired; and at the end of that year if the tenant again holds over for ninety days, the lease is extended for another year, and so on from year to year until the tenant abandons the premises, is turned out of possession or makes a new contract. Where the lease is thus renewed by

holding over under this statute, it is presumed that the terms of the original lease are carried over into the extension provided by the statute. McClelland v. Murphy, 204 Ky. 329, 264 S. W. 733; Long's Ex'rs. v. Bischoff, 277 Ky. 842, 127 S. W. 2d 851. Manifestly, if we accept as true the testimony of Wilson, Golden and Hiatt, as we must in determining whether or not the court correctly directed a verdict in favor of the Company, then the court erred in instructing the jury to find for the Company in the event appellants tore down and destroyed the building, leaving only for the jury's determination the amount of damages.

Nor were appellants entitled to a directed verdict. Accepting as true the testimony of Luxon that he took possession of the property on Jan. 1, 1942, then instead of Wilson, Golden and Hiatt holding over for ninety days each year after Jan. 1, 1942, Luxon made new oral contracts with them whereby they occupied the premises as tenants at will.

The court should have instructed the jury in effect that the written lease expired on Jan. 1, 1942, because the required notice was not given six months before that date extending the term, and they should find for the Company the fair market value of the building at the time it was destroyed, unless they believed from the evidence that at the expiration of the written lease Wilson held over each year thereafter for ninety days until he was succeeded by Golden on April 6, 1943, and unless they believed that Golden held over ninety days each year after Jan. 1, 1944, 1945 and 1946, in which event, they should find for appellants.

There is no merit in appellants' contention that the court erred in its instruction on the measure of damages. The instruction given placed the measure of damages at the fair market value of the building at the time it was destroyed. Appellants insist the court should have instructed the jury that the measure of damages is the fair market value of the building at the time and *place* it was destroyed. There might be justification in appellants' criticism had it not been for the fact there was no question as to the location of the building at the time of its destruction. Nor is there merit in the Company's contention that it was entitled to an instruction on puni-

tive damages, since there was no evidence that appellants acted wantonly or maliciously in destroying the building. True, they intentionally destroyed same, but they had the right to destroy it if they were holding the property at that time under the terms incorporated in the written lease. It is evident appellants thought they had the right to destroy the building and their acts were not malicious or wanton.

Likely there will be another trial of this case, therefore we criticize the third instruction relative to appellants not filling the holes from which the tanks were taken and in not removing the debris resulting from knocking down the building. This instruction accurately gives the measure of damages as to these items but erroneously tells the jury to find for the Company in the event appellants were ordered by Luxon not to fill the holes or remove the debris. Appellants were not present when the building was demolished and it was testified by Golden that Luxon ordered the employees of appellants to stop work and threatened to have them arrested. Therefore, this instruction should have read that the jury will find for appellee on these items unless they believe Luxon ordered the employees of appellants to stop work and thereafter Luxon never requested appellants or their agents to fill the holes.

The judgment is reversed on the appeal for proceedings consistent with this opinion, and is affirmed on the cross-appeal.