BARBABA McKENZIE, *et al.*

*v.*

THE WESTERN GREENBRIER BANK, A CORPORATION, *etc.*

(No. 12105)

Submitted January 16, 1962. Decided February 27, 1962.

*Mahan, Higgins, Thrift & Graney, Charles E. Mahan,* for appellant.

*John L. Detch, Andrew Detch,* for appellees.

BERRY, JUDGE:

This is an action for damages brought under the Rules of Civil Procedure for Trial Courts of Record, effective in this State July 1, 1960. The action is based upon a lease involving a building situate in East Rainelle, West Virginia. The plaintiffs, Barbara McKenzie and J. V. McKenzie, lessors, instituted this action against the defendant, The Western Greenbrier Bank, a Corporation, lessee, to recover cost of removing a bank vault encasement placed in a building by the lessee and for cost of repairs to the building in question, all of which is based on a written lease between the parties. The case was submitted to the jury on the theory of an absolute contractual liability for any damage or injury to the building without considering whether the same was caused by the fault or negligence of the lessee. The jury returned the verdict in favor of the plaintiff in the amount of $13,443.30. The trial court entered judgment on the verdict and overruled a written motion to enter judgment for the defendant, to set aside the verdict and to grant it a new trial, to which judgment and ruling this Court granted an appeal and supersedeas.

The plaintiffs purchased the land upon which the leased building was constructed from A. P. Martin and wife some time before 1950. The Martins started construction of a building on the lot when they owned it but abandoned such construction after footers for the building had been poured. This building was completed by the plaintiffs after purchasing the lot and the first floor thereof was leased to the defendant bank. This bank was formerly known as The Bank of Quinwood and was located at Quinwood, West Virginia. In May, 1950, the bank desired to move its location from Quinwood to East Rainelle, West Virginia, and on May 26, 1950, entered into an option agreement with the plaintiffs for the lease of the first floor of the building owned by plaintiffs in East Rainelle upon certain terms and conditions stated in the option with the provisions that upon the exercise of the option the

lease of said premises would commence on the first day of June, 1950. It further provided, among other things, that the defendant bank had the right to make alterations, additions and improvements to the interior of said premises without any liability for damages which might result therefrom.

After the option was obtained the defendant bank, in accordance with the provisions of the option, made certain alterations, additions and improvements to the interior of said premises which included the installation of a bank vault to be used for banking purposes. This vault was constructed and installed under the right to do so given under the terms or conditions of the option before the execution of the lease on said premises. The defendant bank gave notice of its exercise of the option to lease the premises on June 28, 1950, and the lease in question was executed on August 3, 1950, but it was dated June 1, 1950, in accordance with the provisions of the option.

Certain changes were made in the lease from the provisions contained in the option. Paragraph 6 of the lease provides that the lessors shall make all necessary repairs to the exterior of the premises, including the plate glass windows and fixtures appurtenant to the building on the inside, and that the lessee shall be responsible for all other repairs to the interior, unless the damage necessitating repairing was caused by the negligence of the lessors or other tenants, including all interior painting, remodeling and redecorating.

Paragraph 8 of the lease contained the provisions giving the lessee defendant bank the right, at its own expense and at any time, to make alterations, additions and improvements to the interior of the premises, but omitted the wording appearing in the option "without any liability for damages which might result to said premises as a consequence thereof".

Paragraph 14 of the lease provided for peaceable possession of said premises to be given by the lessee to the lessors at the termination of the lease "in as

good condition as the same are now in, usual wear and tear, fire and unavoidable casualty excepted'', which was provided for in the option, with the words ''including any other exceptions herein contained'' added in the lease at the end of paragraph 14.

Paragraph 11 of the lease contained the same provisions as the option, giving the lessee the right to remove at the end of the term all personal property, fixtures and vault equipment and parts belonging to the lessee in, on, or attached to the said premises.

The rent was also increased from $150.00 per month, as contained in the option, to $161.66 per month, as contained in the lease.

The footers for the building were 24 inches wide, 18 inches deep, with 6 inches underground and 12 inches above the ground, and were made of cement and field stone, with mine rails inserted to reinforce them. The walls of the building consisted of 8 inch cinder blocks on the inside and 4 inch brick veneer on the outside. The second floor of the building consisted of apartments and was supported by I beams placed on pilasters in the walls. A footer was placed in the middle of the building for a partition wall. The building weighed over 220 tons and created a pressure upon the footers of about 1200 pounds per square foot. The concrete vault was built inside the building and was placed upon a separate foundation on much larger footers. The bank vault weighed over 100 tons and created a pressure of about 900 pounds per square foot on its separate footers.

About a year after the defendant bank occupied the leased premises it was necessary to have a leak in the front of the building repaired, and about three or four years after the premises were leased certain cracks were observed in the floor and walls of the building. By the end of the ten year term of the lease the footer in the east wall was broken, and cracks had appeared in the walls, and in the wall on the east side where the bank vault had been constructed the cracks were as

wide as 2 inches. The cracks also appeared in the floor of the building which had settled in some places and risen in others. Numerous cracks were around or near where the bank vault had been installed. The bank vault appeared to be as solid as when it was installed. However, the plaintiff's witnesses claimed that it had settled somewhat.

At the end of the ten year term of the lease the bank did not exercise its option for additional term and surrendered the premises to the lessee plaintiffs, after making certain minor repairs. The plaintiffs then demanded that the defendants remove the vault encasement and make major repairs to the interior and exterior of the building, which the defendants refused to do, relying on the provisions contained in the lease for such refusal.

It is the contention of the defendant bank that the vault in question is a permanent fixture and is part of the realty, although it did remove certain metal parts of the vault, including the door which could be used in the banking business.

The evidence with regard to the damage to the plaintiffs' building was to the effect that it would cost about $5000.00 to remove the vault and around $8000.00 to repair the damage to the building. Notwithstanding the provisions contained in both the option and the lease, the plaintiffs contend that, although they knew that vaults were necessary in the banking business and had visited the bank on numerous occasions during the lease, they did not know the defendant had constructed the bank vault in the building.

The theory upon which the plaintiffs tried this case, as clearly indicated by the pleading and evidence, was that the defendant was liable to the plaintiffs on a contractual basis under the provisions of the lease for the failure to remove the vault encasement and to repair any damage to the building. No attempt was made by the plaintiffs to show any fault or negligence on the part of the defendant in the construction of the vault

or in causing the damage to the building. It is the contention of the plaintiffs that it is not necessary for them to do so.

The questions to be answered in this case are whether the defendant bank, under the provisions of the lease, is required to remove the concrete vault encasement or to pay for the cost thereof, and, second, whether the defendant bank is required to repair the damage to the floor and walls of the building in question, under the conditions or provisions of the lease, or to pay for damages thereof.

It is interesting to note that most cases involving fixtures put on leased premises deal with the right of the lessee to remove such fixtures, and are usually governed by provisions or conditions contained in the lease. 8 M.J., Fixtures, §9; 36 C.J.S., Fixtures, §15; *Childs v. Hurd,* 32 W. Va. 66, 9 S.E. 362; *Jones v. Shufflin,* 45 W. Va. 729, 31 S. E. 975; *Snuffer v. Spangler,* 79 W. Va. 628, 92 S. E. 106; *Pocahontas Coal & Coke Co. v. By-Products Pocahontas Co. et al.,* 112 W. Va. 390, 164 S. E. 504; *Tunis Lumber Co. v. R. G. Dennis Lumber Co.,* 97 Va. 682, 34 S. E. 613; *Blanford v. Trust Co. of Norfolk,* 142 Va. 73, 128 S. E. 640; *Roberts Coal Co., Inc., et al. v. Corder Coal Co.,* 143 Va. 133, 129 S. E. 341; *Roanoke Marble & Granite Co., Inc. v. Standard Gas & Oil Supply Co., Inc.,* 155 Va. 249, 154 S. E. 518. The converse is involved in this case; that is, does the lessor have the right to *require* the lessee to remove the fixture.

The cases dealing with the right of the lessee to remove fixtures usually turn on the provisions contained in the lease, and if the lease does not give that right to the lessee, that is, to remove such fixtures, he cannot do so. The same thing is true with regard to a lessor requiring the lessee to remove fixtures. The provisions or conditions of the lease must be construed in order to ascertain whether the lessor has the right to require the lessee to remove the fixtures.

The general rule with regard to the removal of im-

provements is that fixtures which are attached to the land and become a part of the realty and cannot be removed without causing damage are classified as permanent fixtures and remain with .the realty, and any alterations to buildings are usually held to be permanent improvements. See Collected Cases in 39 A.L.R. 1044 *et seq.;* Cf. *Industrial Bank of Richmond v. Holland Furance Co. et al.,* 109 W. Va. 176, 153 S. E. 309.

Although most trade fixtures may be removed from the leased premises, it has been held that a vault which has been constructed on leased property is a permanent improvement and cannot be removed. *Realty Dock & Improvement Corp. v. Anderson,* 174 Cal. 672, 164 P. 4.

A statement of the general rule is found in 51 C.J.S., Landlord and Tenant, §408, in the following language: "The lessee is not required to remove improvements made by him with the consent of the landlord or under authority of the lease * * * ".

All of the conditions and provisions in the lease, both as to the removal of the permanent fixtures or improvements and the repairs to the building must be read together, and should if possible be interpreted together, in order to give meaning to each and reasonable meaning to all of the language used. *Ginsburg et al. v. Jacobson,* 276 Mass. 108, 176 N.E. 918; *Codman v. Hygrade Food Products Corporation,* 295 Mass. 195, 3 N. E. 2d 759.

Clause 14 of the lease in question provides "That the said lessee shall give peaceable possession of the said premises to the said lessors, their agents, lessees or vendees at the termination of this lease, * * * *in as good condition as the same are now in,* usual wear and tear, fire and unavoidable casualty excepted, *including any other exceptions herein contained."* [Emphasis supplied]

With regard to the part of this clause that requires the leased premises to be returned at the termination

of the lease and "in as good condition as the same are now in", it should be pointed out that at the time the lease was executed the bank vault had already been constructed and placed inside the building, with the consent of the lessor given in the option, although the lease was dated back to June 1, 1950, which was before the construction of the bank vault; and the provisions at the end of this clause "including any other exceptions herein contained" must by necessity refer to clause 8 of the lease, which reads as follows: "That the said lessee, at any time and at its own expense, shall have the right to make alterations, additions and improvements to the interior of said premises". These two clauses, when read together, clearly indicate that the lessee bank had the right to make any alterations and improvements such as the bank vault, which is a permanent fixture because of its manner of construction, and that clause 14, with regard to returning the property in good condition, is subject to the provisions of clause 8.

It has been held that where there are two such clauses in a lease they should be read and construed together, and when the lessee surrenders the leased premises at the termination of the lease, he is not required to remove the alterations or improvements made by virtue of the conditions contained in the lease in order to return the premises in as good condition as they were in at the time the lease was executed. *Cawley v. Jean,* 218 Mass. 263, 105 N.E. 1007.

It has also been held that a lessee cannot remove such permanent fixtures or improvements at the end of the term of the lease if such removal will injure the freehold. *Murray v. Moross,* 27 Mich. 203.

Although there is some conflict in the cases dealing with such matters, the weight of authority in this country is that a lessee is under no duty to remove at the expiration of a lease improvements made with the consent of the lessor or under the authority or provisions of the lease in the absence of an express require-

ment so to do, even if the provisions of the lease give the lessee the right to remove such fixtures. *Savage v. University State Bank,* 263 Ill. App. 457; *Arkansas Fuel Oil Co. v. Connellee,* (1931 Tex. Civ. App.) 39 S. W. 2d 99; *Duvanel v. Sinclair Refining Co.,* 170 Kan. 483, 227 P. 2d 88; 23 A.L.R. 2d 649; *Perry v. J.L. Mott Iron Works Co.,* 207 Mass. 501, 93 N. E. 798; *Republic Invest. Co. v. Naches Hotel Co. et al.,* 190 Wash. 176, 67 P. 2d 858; *Cass et al. v. Home Tobacco Warehouse Co.,* 311 Ky. 95, 223 S. W. 2d 569. See *Tinnerholm v. State,* 15 Misc. 2d 311, 179 N. Y. S. 2d 582. We are therefore of the opinion that in construing the conditions of the lease in question and the authorities applicable thereto, the plaintiffs could not require the defendant to remove the vault from the premises described herein. It appears that no questions of fact are involved with regard to the meaning and construction of the various conditions and provisions of the lease. This was, therefore, a matter of law for the trial court to interpret and construe the conditions and provisions of said lease and it was reversible error to submit this matter to the jury for determination. *Carbon Fuel Company v. Gregory,* 131 W. Va. 494, 48 S. E. 2d 338.

We shall now discuss the question of repairs to the floors and walls of the leased premises.

It is the contention of the plaintiffs that they can recover for all damages to the walls and floor of the leased premises if the building was not returned to them in as good condition as it was when leased, based on absolute contractual right given by the lease.

No attempt was made by the plaintiffs to show any negligence on the part of the defendant regarding the cause of the damage to the building and none was shown. In fact, under the evidence introduced by the defendant it is indicated that there was no negligence on its part at any time it used the leased premises under the terms of the lease. The instructions given by the trial court to the jury were based on the contractual

liability and recovery was allowed to be ascertained by the jury without considering the question of negligence. It should be pointed out that clause 6 of the lease requires that the lessors make all necessary repairs to the exterior of the leased premises and the lessee is only responsible for repairs to the interior and only then if they are not caused by the negligence of the lessors.

The evidence in this case indicates that major damage such as cracks in the wall was on the exterior of the building where cracks are as much as 2 inches wide. If there are any cracks on the interior walls they could not be repaired until the exterior walls are repaired. *Leavitt v. Fletcher,* 10 Allen (Mass.) 119.

At common law where a covenant to repair was contained in the lease and the building was destroyed by some fire or casualty the lessee was responsible for repairs thereto, whether he was at fault or not. However, the common law rule has been changed in both Virginia and West Virginia, and the lessee is now only liable for damages under such conditions when it is shown that the damage is caused by his fault or negligence. The West Virginia statute, Code, 36-4-13, reads as follows: ''No covenant or promise by a lessee that he will leave the premises in good repair shall have the effect, if the buildings or other structures are destroyed by fire or otherwise, in whole or part, without fault or negligence on his part, of binding him to erect such buildings again, or to pay for the same or any part thereof, unless there be other words showing it to be the intent of the parties that he should be so bound.''

This statute not only applies to damage by fire, but damage caused in any other manner, and not only applies to damage to the whole, but to a part thereof. Therefore, it applies to any damage in connection with a clause in a lease to leave the premises in as good repair or condition as when leased. A general statement with regard to both questions involved in this case is

found in 32 Am. Jur., Landlord and Tenant, §807, wherein it is stated: "A covenant by the lessee to leave the demised premises 'in a good condition' or 'in repair' obligates him to repair defects caused by his negligence. Moreover, allowing unauthorized alterations to remain until the end of the term is a breach of a covenant to restore the premises in a proper condition. However, a covenant to keep the demised premises in good repair, and surrender the same in as good condition as reasonable use thereof will permit, does not obligate the tenant to restore the premises to the condition in which they were at the time of the lease, where the necessity of restoration is due to alterations which the tenant made under the authority of the lease."

Notwithstanding what the law may be in other jurisdictions, the law with regard to this matter in the Virginias is well settled since the common law was changed by statutes now requiring that negligence must be present on the part of the lessee before any recovery can be had against the lessee for any damage to the leased premises at the termination of the lease. *Powell v. John E. Hughes Orphanage,* 148 Va. 331, 138 S. E. 637; *Worrell et al. v. Klein,* 101 W. Va. 225, 132 S. E. 495; *Hedrick et als. v. Pack,* 106 W. Va. 332, 145 S. E. 606.

The statutes in both states are the same and the only difference in the application thereunder is that the Virginia Court holds that the burden is upon the lessee to show that such damage was not caused by his fault or negligence. *Powell v. John E. Hughes Orphanage, supra.* However, in West Virginia the burden is upon the lessor to prove that the damage was caused by the fault or negligence of the lessee before recovery can be had. *Hedrick v. Pack, supra; Worrell v. Klein, supra.*

The Virginia case of *Powell v. John E. Hughes Orphanage, supra,* presents a somewhat similar situation as that appearing in the case at bar with regard

to the damage caused to the leased premises, and it was held that the liability of a lessee under the provisions or covenants of a lease to leave the premises in good repair is a question of negligence, and is not an absolute covenant to leave the premises in good repair. This case points out that the common law has been radically changed by the statutes referred to above and recovery depends upon the fault or negligence of the lessee, and that such statute was enacted to change the hardship of the common law rule. The West Virginia case of *Hedrick v. Pack, supra,* held that a lessee was not bound to pay for repairs under a covenant to keep the premises in repair, ordinary wear and tear excepted, unless it was shown that such damage was caused by his fault or negligence and the burden of showing such fault or negligence was upon the lessor. The West Virginia case of *Worrell v. Klein, supra,* is to the same effect.

It is therefore clear that the law in this State with regard to a covenant in a lease to repair and leave the premises in as good condition as when leased, requires that before any recovery for damages to the leased premises can be had by the lessor it is incumbent that the lessor prove such damages were caused by the fault or negligence of the lessee. The case at bar having been tried on the theory of absolute contractual right to recover damages without regard to the showing that the damages were caused by the fault or negligence of the lessee, and the jury having been so instructed, all of which is contrary to the law in this State pertaining to such cases, such procedure constitutes reversible error.

The written motion of the defendant under Rules 50 and 59 of the Rules of Civil Procedure for Trial Courts, which was overruled by the trial court, should have been sustained.

For the reasons stated herein, the judgment of the Circuit Court of Greenbrier County is reversed, the

verdict of the jury is set aside, and a new trial is awarded the defendant.

*Judgment reversed;*
*verdict set aside;*
*new trial awarded.*