## Richmond

### M. H. SHARLIN v. NEIGHBORHOOD THEATRE, INCORPORATED.

April 28, 1969.

Record No. 6873.

Present, All the Justices.

*Thomas J. Harrigan* for plaintiff in error.

*James H. Simmonds; Robert T. Barton, Jr. (Gregory U. Evans; Simmonds, Coleburn, Towner & Carman,* on brief), for defendant in error.

BUCHANAN, J., delivered the opinion of the court.

In 1944 M. H. Sharlin and Neighborhood Theatre, Inc., a Virginia corporation which operated motion picture theatres, entered

into an "agreement and lease" which provided that Sharlin would erect a building on certain property owned by him on Glebe Road, in Arlington county, and would lease the building and some adjoining land to Neighborhood for a period of twenty years for use as a motion picture theatre.

Neighborhood began operating the theatre, under the trade name "Glebe" theatre, near the end of April 1945, and by supplemental agreement executed by the parties in August 1945, the term of the lease was deemed to have commenced at midnight on April 30, 1945, and was to expire at midnight on April 30, 1965. After negotiations between Sharlin and Neighborhood for renewal of the lease proved fruitless, Neighborhood surrendered the premises to him a day or so before April 30, 1965. In the meantime Sharlin had leased the premises to K-B Theatres, another chain.

Subsequently, Sharlin, plaintiff, by motion for judgment, sought to recover damages from Neighborhood, defendant, for alleged breach of covenants in the lease. He alleged that contrary to the terms of the lease Neighborhood had failed to maintain the building and parking lot in good order and repair and had failed to return the premises to him in the same good order and condition as when delivered. He sought damages in the amount of $37,638.27.

Defendant filed its grounds of defense, in essence averring that it had fully performed the terms of the lease and denying that it was indebted to plaintiff. Answers by plaintiff to interrogatories filed by defendant developed that plaintiff was seeking damages for the cost of replacing certain items which he claimed defendant had wrongfully removed from the building and for the cost of repairs to the building and parking lot adjacent thereto.

The case was tried without a jury over a period of six days. After hearing much testimony and receiving numerous exhibits, the court found that plaintiff Sharlin was entitled to recover $1,517.24 and subsequently judgment was entered for him in that amount. Sharlin was granted a writ of error and here claims in effect that because of misconstruction by the court of the provisions of the lease, the court granted him inadequate damages.

The 1944 agreement and lease provided that Sharlin would erect a theatre building pursuant to plans and specifications approved by both parties. The building, as constructed by Sharlin, was to include adequate plumbing and heating facilities and ducts for a cooling system. Neighborhood agreed to equip the building for operation as a motion picture theatre.

During the construction of the building Neighborhood had installed and paid for theatre seats, projection booth and sound equipment, furniture and carpeting. It removed these items at the end of its term, and Sharlin does not contest its right to do so.

Neighborhood also had installed and paid for various light fixtures in the theatre, including those in the underside of the marquee, in the lobby, in the foyer and in the auditorium. It had installed three custom-made attraction panels on the marquee and two lighted "Glebe" signs atop the marquee. Wiring from the outlets to the fixtures was paid for by Neighborhood. The lessee also decorated the interior of the theatre.

After negotiations between Sharlin and Neighborhood for a renewal of the lease were unsuccessful, and Sharlin had leased the premises to K-B Theatres, Neighborhood attempted to sell to K-B as a "package" all its fixtures in the theatre except the seats, but no sale was made. Wade Pearson, Neighborhood's district manager, was then instructed to take out what Neighborhood had put in the theatre.

The theatre ceased operation on April 25, 1965, and the following day workmen started removing the contents of the building. Pearson told the electrician to remove all light fixtures, including the "Exit" lights, except the lights in the ceiling of the auditorium. The electrician testified that he took out the light fixtures and removed the "Glebe" signs, and that in order to remove the seats quickly he cut the wires to the aisle lights; but he denied cutting the wires in the junction boxes. He did not remove the recessed lights in the underside of the marquee and Pearson did not recall these lights being removed.

Sharlin testified that he was in the building shortly after Neighborhood vacated and that all light fixtures except those in the ceiling of the auditorium had been removed. He said that the "Exit" light fixtures—most of which were recessed in the walls—had been "ripped" out. The recessed light fixtures in the marquee had been removed.

The electrician who replaced many of the light fixtures for K-B testified that when the aisle lights had been disconnected from the junction boxes the wiring had been cut so short that new wiring was required; that wiring to many of the ceiling fixtures had been cut short.

Among other items of damage, Sharlin sought to recover the replacement and installation costs of the two "Glebe" signs, the three

attraction panels, the light fixtures in the underside of the marquee, the lobby, the foyer and the "Exit" lights and the cost of various wiring.

Defendant asserts that under the provisions of the lease the light fixtures, panels and signs belonged to it, the lessee, and it had the right to remove them.

The paragraph in question provided:

> "* * Lessee agrees to equip said building at Lessee's own cost and expense, with seats, booth equipment, sound equipment, carpets and necessary furniture for the operation of a moving picture theatre, and further agrees at its own expense and as soon as the same may become available, to install the necessary equipment such as motors, compressors and the like, for a cooling system. All such equipment, fixtures or furniture of whatsoever kind, so installed or brought upon the premises by the Lessee, whether or not the same may be affixed to the freehold, shall at all times remain the property of the Lessee, subject only to Lessor's liens for rent as provided by law."

Plaintiff contends that the word "such" before equipment, fixtures or furniture" in the second sentence modifies all of those words and refers to the items specified in the preceding sentence, that is, seats, booth equipment, sound equipment, carpets, necessary furniture and necessary equipment for a cooling system; that the light fixtures, panels and signs were not mentioned in the first sentence, and therefore Neighborhood had no right to remove these items and plaintiff was entitled to their replacement cost.

The trial court held that the second sentence was not limited by the items enumerated in the first sentence quoted and that under the second sentence Neighborhood owned and had the right to remove the items in contention which it had placed in plaintiff's building. We agree with that holding.

"Such" refers to an object already particularized. It is "a descriptive and relative word, and refers to the last antecedent, unless the meaning of the sentence would thereby be impaired." *Strawberry, Etc.* v. *Starbuck*, 124 Va. 71, 86, 97 S.E. 362, 367. Its meaning is not to be determined in isolation. The preceding sentence speaks of equipment and necessary furniture. It is followed by "All such equipment, fixtures or furniture *of whatsoever kind, so installed or brought upon the premises by the Lessee*" (italics added). The italicized

words broaden the terms of the preceding sentence and show a purpose to include things in addition to those specifically named. Considering the paragraph in its entirety, it does not preclude Neighborhood from removing items which it had brought on or installed on the premises.

It is well settled that by agreement the parties may fix the character and control the disposition of property, which in the absence of such a contract, would be held to be a fixture, where no absurdity or general inconvenience would result from the transaction. *Bolin* v. *Laderberg*, 207 Va. 795, 800, 153 S.E.2d 251, 255; *Tunis Co.* v. *Dennis Co.*, 97 Va. 682, 686, 34 S.E. 613, 614. The real test is whether the item falls within the contractual classification preventing or permitting removal. *Bolin* v. *Laderberg, supra*, 207 Va. at 801, 153 S.E. 2d at 255.

Plaintiff further contends that because the items in question were installed in the building by defendant prior to April 30, 1945, the court should have interpreted the 1944 agreement and lease and the 1945 addendum thereto so as to preclude their removal.

This contention is without merit. The addendum specifically provides that it should at all times be construed with and as part of the original agreement and lease and that nothing in the addendum should be construed as altering or modifying the original provisions.

The court did not particularize the items for which it allowed recovery of $1,517.24 by the plaintiff. The court did state that it could not conceive that it was within the contemplation of the parties that things recesssed into the building (that is, the "Exit" light fixtures and the light fixtures on the underside of the marquee) "were intended to ever leave it"; that it was awarding an item for short wires throughout the building and for roughness in removing fixtures and damage to doors.

The trial court properly interpreted the lease and it has not been shown that it did not award adequate damages for the items it allowed.

Plaintiff also complained of the condition of the parking lot at the time defendant surrendered the premises. Although Sharlin testified that he paid for asphalting the lot at the time the lease began, one of his witnesses and witnesses for defendant testified that the lot was gravel-covered when the lease began and that subsequently defendant had it asphalted at its own expense. The court made a finding of fact that the lot was not paved when the lease commenced.

After the lot was asphalted defendant repaired potholes as they appeared and had the lines indicating parking spaces repainted.

The lease provided that during the term thereof the lessee would, at its expense, maintain the parking space and facilities "in suitable condition for the parking of automobiles." The court held that it was defendant's duty to repair to a standard involving " 'ordinary wear and tear' " and " 'in suitable condition for the parking of automobiles' ". The trial court heard evidence about the cost of repairing the parking lot to this standard and it is not shown that it failed to allow proper damages for this item.

Plaintiff next contends that the court erred in admitting certain testimony of Morton G. Thalhimer, president of Neighborhood Theatre, Inc., in 1944 and 1945 and chairman of the board of directors at time of trial. After Thalhimer told of his experience with theatre leasing he was asked by defendant's counsel about custom and usage in the leasing of theatres and then about the negotiations leading up to the execution of the lease here involved. Plaintiff objected and the court received the evidence conditionally and specifically stated that the testimony concerning the negotiations between the parties would be subject to a later renewed motion to strike.

In its memorandum giving its reasons for overruling the motion for a new trial, the court stated that plaintiff had failed to renew his motion to strike, but that in any event the court did not rely upon Thalhimer's testimony about the negotiations. Plaintiff was clearly not prejudiced by these rulings on the evidence.

Plaintiff next contends that the court erred in admitting evidence that most of the repairs made after defendant surrendered the premises were paid for by the new tenant, K-B Theatres.

While the measure of plaintiff's damages was the reasonable cost of putting the premises in the required state of repair, and this is true even if the repairs have not been made by the landlord (see *Vaughan* v. *Mayo Milling Co.*, 127 Va. 148, 162, 102 S.E. 597, 602), in the present case the defendant had the right to show that the repairs were being made by a new tenant who was remodeling the theatre for its own use. Much of plaintiff's proof of the cost of repairs were the bills rendered to K-B. In viewing this evidence the court was entitled to know that these costs were part of a wholesale remodeling plan.

Plaintiff finally contends that the court erred in not awarding damages for these additional items:

When defendant surrendered the premises it left on the roof, attached to pipes running through the surface of the roof, an evaporative condenser for the air-conditioning system. Plaintiff paid the company which installed the new heating and air-conditioning system to remove the condenser and piping and a compressor and motor which were in the basement. Defendant's witness Pearson testified that the condenser was left on the roof "in case they could use it," and that Sharlin made no request that the condenser be removed.

While the condenser remained the property of the defendant under the provisions of the lease, the lease did not require that defendant remove its property. A lessee is not required to remove improvements made by him with the consent of the landlord or under authority of the lease unless the lease so provides. 51C C.J.S., Landlord & Tenant, § 408, p. 1051; *Ibid*, § 411, p. 1054; see also *McKenzie v. Western Greenbrier Bank*, 146 W. Va. 971, 976, 124 S.E.2d 234, 238. The trial court did not err in not awarding the plaintiff damages for the cost of removal of the condenser.

Plaintiff asserts that the court erred in failing to award damages for the replacement of exit doors. The evidence showed that exit doors in theatres are subjected to hard wear, and that defendant repeatedly during the term of the lease had the doors repaired.

After the court announced its verdict, upon question by plaintiff's counsel the court stated that it allowed an item on the doors, "but one you would say was quite low." Since the court heard evidence of the efforts by defendant to keep the doors in repair and the evidence of the hard wear received by the doors and since it allowed an item for the doors, there is clearly no showing that the court erred in this connection.

Plaintiff further argues that the court erred in not awarding damages because of the condition of the paint in the auditorium. Plaintiff's witness who redecorated the theatre for K-B estimated that about $600 of his company's bill was due to poor condition of the premises. Other evidence indicated that during the term of the lease the ceiling and walls had leaked and that Sharlin had replaced the roof and waterproofed the walls. The court could properly conclude from the evidence that plaintiff had failed to prove that defendant was responsible for this item.

In this case the court was called upon to rule on matters of law and also to ascertain the facts. After all the evidence was received the court made its finding for plaintiff in a gross amount of damages. It does not appear that the court misapplied the law to the case

or that plaintiff has shown, as a matter of law, that he is entitled to more damages than he was awarded by the court.

The judgment appealed from is therefore

*Affirmed.*

GORDON, J., concurring in result.

Counsel for both parties agreed that if Neighborhood wrongfully removed equipment from the leased building, the measure of Sharlin's damages was the difference between the value of the building before and after the removal. Yet Sharlin's evidence showed only the cost of purchasing and installing new equipment. So although I do not agree with the reasoning of the majority, I concur in affirming the judgment on the ground that Sharlin failed to prove his damages.