GLENN MURRAY *v.* RAYMOND M. LOPES, COMMISSIONER OF CORRECTION, ET AL.
(13048)

HEALEY, SHEA, CALLAHAN, SANTANIELLO and GLASS, Js.

Argued June 11—decision released August 18, 1987

*Robert Graziano,* certified legal intern, with whom were *Miriam Berkman* and, on the brief, *Stephen Wizner, John L. Pottenger, Jr., Sally Zanger, Robert A. Solomon* and *Mary A. McCarthy,* for the appellant (petitioner).

*Carl J. Schuman,* assistant attorney general, with whom were *L. D. McCallum,* assistant attorney general, and, on the brief, *Joseph I. Lieberman,* attorney general, and *Robert Statchen,* assistant attorney general, for the appellees (respondents).

CALLAHAN, J. This is an appeal from the denial of a petition for a writ of habeas corpus challenging the calculation of the petitioner's statutory good time credit. The petitioner has appealed from the judgment of the habeas court finding that, although statutory sentence reduction credit could be *earned* while confined at the Whiting Forensic Institute (Whiting), such credit could not be applied to gain early release while the petitioner was in the custody of the department of mental health pursuant to General Statutes § 17-245. We find error.

The relevant facts are undisputed. On February 6, 1985, the petitioner was arrested on a charge of risk of injury to a minor in violation of General Statutes § 53-21. He was detained prior to trial in the Bridgeport Correctional Center until June 20, 1985, at which time he pleaded guilty to a substitute information charging him with the crime of sexual assault in the third degree in violation of General Statutes § 53a-72a (a). Prior to sentencing, the trial court, *Moraghan, J.,* pursuant to General Statutes § 17-244 (a), ordered the commissioner

of mental health to conduct a mental examination of the petitioner at Whiting. Thereafter, in accordance with the report from Whiting and pursuant to § 17-245 (c), the trial court, finding the petitioner to be mentally ill and a danger to himself or others, sentenced him as follows: "[H]e is ordered committed to the custody of the commissioner of correction for a period of two years, execution of that sentence is to be suspended after he has served eighteen months. Thereafter he is placed on probation for two years. In accordance with the findings, the place of confinement since he does need the care, custody and treatment of the institute, shall be the Whiting Forensic Institute." The petitioner's confinement was calculated to begin on the date of sentencing, August 19, 1985, and his release was scheduled for February 19, 1987. This calculation did not afford the petitioner credit for presentence jail time pursuant to General Statutes § 18-98d (a), presentence jail good conduct or "good time" pursuant to General Statutes § 18-98d (b), or prison good time pursuant to General Statutes § 18-7a (c). If all the foregoing statutory sentence reduction credit had been applied to the petitioner's sentence for all the time he was confined, he would have been discharged from his confinement at Whiting on March 26, 1986.

On May 23, 1986, the petitioner, while still confined at Whiting, filed a petition for a writ of habeas corpus alleging that he had a statutory right to sentence reduction credit, and alternatively, that the state's practice of awarding good time and jail time credit to mentally ill convicts tranferred from correctional facilities to Whiting pursuant to General Statutes §§ 17-194c through 17-194g and denying such credit to those convicts initially confined at Whiting, pursuant to § 17-245, denies him equal protection of the law as guaranteed by the fourteenth amendment to the United States constitution and article first, §§ 1 and 20, of the Con-

necticut constitution. On July 3, 1986, the habeas court released its memorandum of decision holding that although the petitioner could *earn* prison good time credit while confined at Whiting, he could not use the credit to gain early release. The habeas court concluded that the accumulated sentence reduction credit could only be deducted from the petitioner's sentence, if, and when, he was transferred back to a correctional institution. The habeas court did not address the equal protection claim. This appeal followed.

The petitioner was released from Whiting pursuant to § 17-251 (b), on August 18, 1986, prior to the filing of this appeal. All parties,[1] however, urge this court to address the issue raised in this appeal notwithstanding any mootness concerns.

" 'It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow.' *Reynolds* v. *Vroom,* 130 Conn. 512, 515, 36 A.2d 22 (1944); *McCallum* v. *Inland Wetlands Commission,* 196 Conn. 218, 225, 429 A.2d 508 (1985); *Accurate Forging Corporation* v. *UAW Local No. 1017,* 189 Conn. 24, 26, 453 A.2d 769 (1983); *State Farm Life & Accident Assurance Co.* v. *Jackson,* 188 Conn. 152, 156, 448 A.2d 832 (1982); *CEUI* v. *CSEA,* 183 Conn. 235, 246, 439 A.2d 321 (1981). 'In the absence of an actual and existing controversy for us to adjudicate in any sense of the term, the courts of this state may not be used as a vehicle to obtain judicial opinions upon points of law; *Reply of the Judges,* 33 Conn. 586 [1867]; and where the question presented is purely academic, we must refuse to

---

[1] Audrey Worrell, the commissioner of mental health, and Colin Angliker, the director of Whiting, were named as parties defendant in addition to the commissioner of correction.

entertain the appeal. *Young* v. *Tynan,* 148 Conn. 456, 459, 172 A.2d 190 [1961].' *Connecticut Foundry Co.* v. *International Ladies Garment Workers Union,* 177 Conn. 17, 19, 411 A.2d 1 (1979)." *Shays* v. *Local Grievance Committee,* 197 Conn. 566, 571–72, 499 A.2d 1158 (1985).

The petitioner in this case was not released from Whiting unconditionally. The sentencing court released him to a two year period of probation, which will not be completed until August 18, 1988. Had the habeas court applied the statutory sentence reduction credit that the petitioner claims he is entitled to, he would have been released from confinement no later than May 26, 1986, and accordingly, would have completed his probation no later than May 26, 1988. Therefore, since our resolution of the issue presented in this appeal will affect his period of probation, the appeal is not moot.

General Statutes § 18-7a (c)[2] provides: "Any person sentenced to a *term of imprisonment* for an offense committed on or after July 1, 1983, may, while held in default of bond or while serving such sentence, by good conduct and obedience to the rules which have been established for the service of his sentence, earn a reduction of his sentence as such sentence is served . . . ."

---

[2] "[General Statutes] Sec. 18-7a. GOOD CONDUCT CREDIT FOR PRISONERS. . . .

"(c) Any person sentenced to a term of imprisonment for an offense committed on or after July 1, 1983, may, while held in default of bond or while serving such sentence, by good conduct and obedience to the rules which have been established for the service of his sentence, earn a reduction of his sentence as such sentence is served in the amount of ten days for each month served and pro rata for a part of a month served of a sentence up to five years, and twelve days for each month served and pro rata for a part of a month served for the sixth and each subsequent year of a sentence which is more than five years. Misconduct or refusal to obey the rules which have been established for the service of his sentence shall subject the prisoner to the loss of all or any portion of such reduction by the commissioner or his designee."

(Emphasis added.) Similarly, General Statutes § 18-98d[3] provides: "(a) Any person who is confined to a community correctional center . . . shall, *if subsequently imprisoned,* earn a reduction of his sentence equal to the number of days which he spent in such facility . . . . (b) In addition to any reduction allowed under subsection (a), if such person obeys the rules of the facility he may receive a good conduct reduction . . . ." (Emphasis added.)[4]

---

[3] "[General Statutes] Sec. 18-98d. PRESENTENCE CONFINEMENT CREDIT FOR CONFINEMENT RESULTING FROM AN OFFENSE COMMITTED ON OR AFTER JULY 1, 1981. (a) Any person who is confined to a community correctional center or a correctional institution for an offense committed on or after July 1, 1981, under a mittimus or because such person is unable to obtain bail or is denied bail shall, if subsequently imprisoned, earn a reduction of his sentence equal to the number of days which he spent in such facility from the time he was placed in presentence confinement to the time he began serving the term of imprisonment imposed; provided (1) each day of presentence confinement shall be counted only once for the purpose of reducing all sentences imposed after such presentence confinement; and (2) the provisions of this section shall only apply to a person for whom the existence of a mittimus, an inability to obtain bail or the denial of bail is the sole reason for his presentence confinement, except that if a person is serving a term of imprisonment at the same time he is in presentence confinement on another charge and the conviction for such imprisonment is reversed on appeal, such person shall be entitled, in any sentence subsequently imposed, to a reduction based on such presentence confinement in accordance with the provisions of this section. In the case of a fine each day spent in such confinement prior to sentencing shall be credited against the sentence at the rate of ten dollars.

"(b) In addition to any reduction allowed under subsection (a), if such person obeys the rules of the facility he may receive a good conduct reduction of any portion of a fine not remitted or sentence not suspended at the rate of ten days or one hundred dollars, as the case may be, for each thirty days of presentence confinement; provided any day spent in presentence confinement by a person who has more than one information pending against him may not be counted more than once in computing a good conduct reduction under this subsection. . . ."

[4] The petitioner concedes that the presentence jail time statute, General Statutes § 18-98d (a), clearly applies only to time spent in a correctional institution, and therefore would not apply to sixty days presentence time spent at Whiting while he was being examined under § 17-244. The presentence jail time credit that the petitioner is seeking is for time spent as a pretrial detainee at the Bridgeport Correctional Center, not for the pretrial time spent at Whiting.

In construing these provisions, the habeas court agreed with the petitioner's argument that time spent at Whiting was "imprisonment" for purposes of §§ 18-7a and 18-98d, and thus statutory good time credit could be *earned* by an individual sentenced in accordance with a conviction and confined at Whiting for custody, care and treatment pursuant to § 17-245 (c).[5] On appeal, the petitioner does not claim error in this finding.[6] Rather, the petitioner claims that the habeas court erred in concluding that his accumulated sentence reduction credit should be withheld until he was returned to a correctional facility. We agree with the petitioner.

We have consistently held that if a statute is clear and unambiguous, there is no room for construction. *State* v. *James,* 197 Conn. 358, 363, 497 A.2d 402 (1985); *State* v. *Smith,* 194 Conn. 213, 222, 479 A.2d 814 (1984); *Moscone* v. *Manson,* 185 Conn. 124, 128, 440 A.2d 848 (1981). Once the habeas court had determined that an individual sentenced in accordance with

---

[5] "[General Statutes] Sec. 17-245. DISPOSITION OF DEFENDANT AFTER REPORT. . . .

"(c) If at such hearing the court finds the defendant is not in need of custody, care and treatment at the institute, it shall sentence him in accordance with the conviction or place him on probation. If the court finds that such person is in need of outpatient psychiatric treatment, it may place him on probation on condition that he receive such treatment. If the court finds such person to be mentally ill and dangerous to himself or others and to require custody, care and treatment at the institute, it shall sentence him in accordance with the conviction and order confinement in the institute for custody, care and treatment provided no court may order such confinement if the report does not recommend confinement at the institute. The defendant shall not be subject to custody, care and treatment under this part beyond the maximum period specified in the sentence."

[6] We note that although the respondents discuss the issue of whether confinement at Whiting is imprisonment for purposes of General Statutes § 18-7a, they did not file any preliminary statement of issues for the purposes of presenting this issue as an alternate ground for affirmance of the habeas court judgment. Practice Book § 4013 (a) (1). We therefore will not review the merits of this issue. See *Lynch* v. *Davis,* 181 Conn. 434, 437, 435 A.2d 977 (1980); *City Council* v. *Hall,* 180 Conn. 243, 247 n.5, 429 A.2d 481 (1980).

a conviction, and then confined at Whiting, was "imprisoned" within the meaning of General Statutes § 18-7a, it was bound to apply the law as written; *Orticelli* v. *Powers,* 197 Conn. 9, 13, 495 A.2d 1023 (1985); *Muha* v. *United Oil Co.,* 180 Conn. 720, 730, 433 A.2d 1009 (1980); and direct the commissioner of correction to deduct from the petitioner's sentence the statutory reduction credit he had earned. Instead, the court went beyond the plain language of these statutory provisions to conclude that the application of such credit to the sentence of a prisoner confined at Whiting would conflict with the purpose of General Statutes § 17-251,[7] which, in conjunction with § 17-250,[8] provides for peri-

[7] "[General Statutes] Sec. 17-251. REVIEW OF CASES AFTER PERIODIC EXAMINATIONS. DISPOSITION OF CASES; FURTHER TREATMENT, TRANSFER, LEAVE OF ABSENCE, PAROLE. (a) As soon as is practicable the director shall act upon the examination reports of his staff. Upon review of each report and upon consideration of what is for the benefit of the patient and for the benefit of society, the director shall determine that such patient: (1) Remain in the institute for further treatment or be transferred to some other facility under the control of the commissioner or (2), if such patient is under commitment, be granted a leave of absence or extended visit or (3), if such patient is under sentence and is eligible for parole, be granted a parole; or (4) has sufficiently improved to warrant his discharge from the institute provided if such person was sentenced and confined in the institute under section 17-245, he shall not be released except upon order of the court by which he was confined under said section, after notice to said court by the director.

"(b) The court, upon its own motion or at the request of the defendant or his attorney, may at any time hold a hearing to determine whether such person should be discharged from the institute prior to the expiration of the maximum period of his sentence. Prior to such hearing, the institute shall file a report with the court concerning the patient's mental condition. The court will appoint a physician specializing in psychiatry to examine the patient and report to the court. Such hearing shall be held at least once every five years. If the court determines the patient should be released, granted parole or returned to the custody of the commissioner of correction."

[8] "[General Statutes] Sec. 17-250. PERIODIC EXAMINATIONS OF PATIENTS. Not less than once every six months the staff of the institute shall give a complete psychiatric examination to every patient confined in the institute. As used in this section and sections 17-251 to 17-254, inclusive, the word 'patient' means any person confined for custody, care and treatment

odic examinations of patients at Whiting by the director of the institute and as ordered by the court. The habeas court, reasoning that the emphasis in § 17-251 was the person's mental condition, stated that the patient cannot be "discharged from the institute prior to the expiration of his sentence unless the court finds that his mental condition warrants such discharge. 'Good time' would not be a valid consideration in making such a decision. If a person were to be released prior to the expiration of his sentence on the basis of 'good time,' it would defeat the purpose of . . . Sec. 17-245, i.e., to provide treatment."

We agree that jail time and good conduct credit provisions are not valid considerations in determining whether a patient at Whiting should be discharged from the institute, pursuant to General Statutes § 17-251, prior to the completion of his sentence. This provision, however, provides for discretionary release or transfer from Whiting based upon the patient's psychiatric improvement. As the petitioner points out, the benefit of early release under § 17-251 is in addition to, not in lieu of, the statutory sentence reduction credit that automatically accrues to all prisoners, subject only to disciplinary forfeiture. See *Wolff* v. *McDonnell,* 418 U.S. 539, 557, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974); *Bolling* v. *Manson,* 345 F. Sup. 48, 50 (D. Conn. 1972); *Roque* v. *Warden,* 181 Conn. 85, 93–94, 434 A.2d 348 (1980). While it is true that the legislature in enacting

under section 17-245. Such examination shall ascertain whether the patient is mentally ill and in need of custody, care and treatment at the institute and, in making such determination, the staff shall assemble such information and follow such procedures as are used in initial examinations by the diagnostic unit to indicate the need for custody, care and treatment. The record of the examination shall include the information required insubdivisions (1), (2) and (3) of subsection (d) of section 17-244 and a recommendation for the future treatment of the patient examined. The record of the examination may include a recommendation for transfer of the patient or change in confinement status."

a law is presumed to have intended to make one consistent body of law; *Frazier* v. *Manson,* 176 Conn. 638, 642, 410 A.2d 475 (1979); the fact that there are two different statutory release systems does not compel the conclusion that they are inconsistent or conflict with each other. See *Bolling* v. *Manson,* supra, 52.

We also note that "[t]he legislature, cognizant of the constitutional guarantees of equal protection, must be deemed to have sought to attain a rational and sensible result that avoids placing a statute in constitutional jeopardy. *Peck* v. *Jacquemin,* 196 Conn. 53, 63–64, 491 A.2d 1043 (1985); *Moscone* v. *Manson,* [supra]." *State* v. *Jenkins,* 198 Conn. 671, 679, 504 A.2d 1053 (1986). The good conduct statutes do not on their face require that persons sentenced and then confined at Whiting pursuant to § 17-245 be treated differently with respect to the computation of their sentences from those transferred to Whiting from correctional institutions pursuant to General Statutes §§ 17-194c through 17-194g;[9]

---

[9] "[General Statutes] Sec. 17-194c. VOLUNTARY ADMISSION OF INMATES OF CORRECTIONAL INSTITUTIONS IN HOSPITAL FOR MENTAL ILLNESS. The provisions of subection (a) of section 17-187 shall apply to any person who is in the custody of the commissioner of correction provided that no such person shall be received in a hospital for observation and treatment unless a physician designated by the commissioner of correction notifies in writing both the commissioner of correction and the commissioner of mental health that such person is in need of observation and treatment in a hospital for mental illness. No such person shall be confined in any such hospital for more than ten days after he has given written notice of his desire to leave, without commitment, pursuant to the provisions of section 17-178, by the court of probate for the district wherein such person is hospitalized. In the absence of such commitment, such person, if in the custody of the commissioner of correction, shall be returned to any institution administered by the department of correction as the commissioner of correction shall designate, unless his custody in the commissioner of correction has terminated, in which case he shall be discharged."

"[General Statutes] Sec. 17-194d. EMERGENCY CONFINEMENT IN MENTAL HOSPITAL OF INMATES OF CORRECTIONAL INSTITUTIONS. Any person who is in the custody of the commissioner of correction (1) who has suddenly become in need of care and treatment in a hospital for a psychiatric disorder, other than drug dependence, whom a physician designated by the

as dictated by the present policy of the commissioner of correction. See *Delafose* v. *Manson,* 385 F. Sup. 1115, 1117 (D. Conn. 1974). It is neither rational nor sensible to allow all prisoners sentenced to a term of imprisonment, regardless of where they are confined, to earn good conduct credit, but, at the same time, withhold

commissioner of correction finds is a danger to himself or others or to the security or order of the institution wherein he is confined, or (2) who is in need of care and treatment for drug dependence when his condition is acute and creates a pronounced danger to himself or others or to the security or order of the institution wherein he is confined, may be confined in a hospital under an emergency certificate as hereinafter provided, for not more than fifteen days without order of any court. If a written complaint for commitment of such person has been filed in the court of probate for the district wherein such person is hospitalized prior to the expiration of such fifteen days such confinement shall be continued under such emergency certificate for an additional thirty days, without further order, not more than forty-five days in all, until the completion of the probate proceedings. At any time such person is found not to be mentally ill or acutely drug dependent, the superintendent of such hospital shall immediately return him to any institution administered by the department of correction as the commissioner of correction shall designate, unless his custody in the commissioner of correction has terminated, in which case he shall be discharged. The emergency certificate provided for in this section shall be left with the person in charge of such hospital at the time of delivery of the person to such hospital and such certificate shall be dated not more than three days prior to its delivery, signed by a physician licensed to practice medicine and surgery under the provisions of chapter 370, who is designated by the commissioner of correction. Such certificate shall state the date of the personal examination of the person to be confined, which shall be not more than three days prior to the date of signature of the certificate, shall state the findings of the physician relative to the physical and mental condition of the person and the history of the case, if known, and shall state that it is the opinion of the physician that the person examined by him is in need of immediate care in a hospital. Prior to hospitalization under the provisions of this section, any person shall have the right to be examined by a physician of his own choosing, and if such physician concludes from his examination that such person is not mentally ill or acutely drug dependent, such person shall not be admitted to or detained in a hospital under the provisions of this section. If a mentally ill person who has been admitted to any hospital under the provisions of this section, the person in charge thereof shall cause proceedings to be instituted for the commitment, pursuant to the provisions of section 17-178, of such person in the court of probate having jurisdiction in the town where such hospital is located. Any irregularity in the temporary confinement of such person shall be deemed

the application of such credit to the sentences of those prisoners confined at Whiting, pursuant to § 17-245. Therefore, we conclude that any person sentenced to a term of imprisonment should be credited with sentence reduction credit as it accrues.[10]

cured by the judge of probate ordering his commitment, and no such commitment shall be invalid because of such irregularity.''

"[General Statutes] Sec. 17-194e. COMMITMENT PROCEEDINGS FOR INMATES OF CORRECTIONAL INSTITUTIONS TO HOSPITALS FOR MENTAL ILLNESS. The provisions of section 17-178 shall apply to any person regarding whom proceedings for commitment are being instituted under section 17-194c or 17-194d, and to any other person in the custody of the commissioner of correction, except that if the court revokes the order of commitment, the person shall be returned to any institution administered by the department of correction as the commissioner of correction shall designate, unless his custody in the commissioner of correction has terminated, in which case he shall be discharged.''

"[General Statutes] Sec. 17-194f. DISCHARGE FROM HOSPITAL OF INMATES OF CORRECTIONAL INSTITUTIONS. The provisions of section 17-192 shall apply to any person committed to such hospital pursuant to sections 17-194d and 17-194e, except that upon such discharge (1) the person shall be returned to any such institution administered by the department of correction as the commissioner of correction shall designate, unless his custody in the commissioner of correction has terminated and (2) the commissioner of correction shall notify the prosecuting official of any court in which any such person has criminal charges pending against him.''

"[General Statutes] Sec. 17-194g. HOSPITALIZATION IN WHITING FORENSIC INSTITUTE OF DANGEROUS OR DESPARATE INDIVIDUAL. If any person in the custody of the commissioner of correction who is brought to a hospital pursuant to the provisions of sections 17-179, 17-191, 17-194b to 17-194g, inclusive, 17-197 and 17-198 is a desparate or dangerous individual, such person shall be hospitalized in the Whiting Forensic Institute. If the Whiting Forensic Insitute is unable to accommodate such transfer, then such person shall remain in the custody of the commissioner at a correctional institution, there confined under appropriate care and supervision. Under no circumstances shall a mentally ill inmate requiring maximum security conditions be placed in a state hospital for the mentally ill which does not have the facilities and trained personnel to provide appropriate care and supervision for such individuals.''

[10] We recognize, as the habeas court did, that, in some instances, the application of sentence reduction credit may result in the release of a potentially dangerous individual who is still considered to be mentally ill. The civil commitment statutory provisions, General Statutes § 17-176 et seq., however, provide a procedure for containing the dangerously mentally ill whose criminal sentences have expired.

There is error and the case is remanded with direction to correct the judgment in accordance with this opinion.

In this opinion the other justices concurred.