KEN NICHOLS *v.* THOMAS WARREN, WARDEN
(13381)

PETERS, C. J., HEALEY, SHEA, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued October 4—decision released November 15, 1988

*L. D. McCallum,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellant (respondent).

*Audrey C. Martinsky,* for the appellee (petitioner).

ARTHUR H. HEALEY, J. The sole issue in this case is whether General Statutes § 18-7a (c)[1] authorizes the

---

[1] General Statutes § 18-7a provides: "GOOD CONDUCT CREDIT FOR PRISONERS. (a) Except as provided in subsections (b) and (c) any person sentenced to a term of imprisonment, on and after October 1, 1976, and while still serving such sentence whether such sentence is for a definite, indefinite or indeterminate term, and regardless of the institution wherein the prisoner is confined may, by good conduct and obedience to the rules which have been established for the service of his sentence, earn a commutation or diminution of his sentence in the amount of ten days for each month, and pro rata for a part of a month, of a sentence which is for not more than five years, and fifteen days for each month, and pro rata for a part of a month, for the sixth and each subsequent year of a sentence of more than five years. In the case of an indeterminate sentence, such credit shall apply to both the minimum and maximum term. In the case of an indefinite sentence, such credit shall apply to the maximum term only. Any act of misconduct or refusal to obey the rules which have been established for the service of his sentence shall subject the prisoner to the loss of all or any portion of such credit by the commissioner or his designee.

"(b) Except as provided in subsection (c), any person sentenced to a term of imprisonment for an offense committed on or after July 1, 1981, may, while held in default of bond or while serving such sentence, by good conduct and obedience to the rules which have been established for the service of his sentence, earn a reduction of his sentence in the amount of ten days for each month and pro rata for a part of a month of a sentence up to five years, and twelve days for each month and pro rata for a part of a month for the sixth and each subsequent year of a sentence which is more than five years. Misconduct or refusal to obey the rules which have been established for the service of his sentence shall subject the prisoner to the loss of all or any portion of such reduction by the commissioner or his designee.

"(c) Any person sentenced to a term of imprisonment for an offense committed on or after July 1, 1983, may, while held in default of bond or while serving such sentence, by good conduct and obedience to the rules which

forfeiture of good time credit that a prisoner has not yet earned, after a prisoner has committed disciplinary offenses while incarcerated.

Under General Statutes § 18-7a (c), the respondent is authorized to reduce an inmate's sentence for good behavior and obedience to the rules of the correctional facility. This sentence reduction is commonly known as "statutory good time." Sentence reductions for inmates sentenced after July 1, 1983, are governed by § 18-7a (c) and are calculated automatically by a computerized system. Pursuant to § 18-7a (c), an inmate is entitled to earn ten days of good time for each month served in obedience to the rules.

On March 28, 1985, the petitioner, Kenneth E. Nichols, was sentenced to four years of incarceration after pleading guilty to burglary charges. Without any sentence credits, the petitioner would have been released from confinement on March 27, 1989. At oral argument, counsel notified the court that the petitioner had been released from confinement and is on probation.

On April 9, 1985, the department of correction credited the petitioner with one day of statutory good time for good behavior during three days in March. On April 24, 1985, while incarcerated at the Enfield correctional facility, the petitioner received a disciplinary report for disobeying a direct order. The petitioner was

have been established for the service of his sentence, earn a reduction of his sentence as such sentence is served in the amount of ten days for each month served and pro rata for a part of a month served of a sentence up to five years, and twelve days for each month served and pro rata for a part of a month served for the sixth and each subsequent year of a sentence which is more than five years. Misconduct or refusal to obey the rules which have been established for the service of his sentence shall subject the prisoner to the loss of all or any portion of such reduction by the commissioner or his designee."

granted ten days of good time on May 1, 1985, but forfeited thirty days on May 13, 1985, as a result of the April 24 incident. At that time, the number of days forfeited exceeded the number of days for which the petitioner had received good time credit. Therefore, the commissioner of correction prospectively forfeited the excess and the petitioner's computerized time sheet reflected that he "owed" nineteen days of good time.

The commissioner ordered another ninety days forfeited on May 18, 1985, for an incident that had occurred on April 27. During a routine inspection of the Enfield facility on April 27, correction officers found the petitioner in possession of a two-inch piece of brass that was sharpened to a point, and the petitioner shouted obscenities at the inspecting officers. By June 1, 1985, the petitioner had received another ten days of good time. Therefore, as of June 1, 1985, the petitioner had been granted twenty-one days of good time, had forfeited 120 days, and thus "owed" ninety-nine days.

This process of earning and forfeiting good time continued throughout the petitioner's sentence. The respondent's brief indicates that, as of the date of the habeas hearing, the petitioner had forfeited 1305 days and had earned 281 days of good time.[2]

While incarcerated in the New Haven correctional center, the petitioner brought a writ of habeas corpus to the Superior Court for the judicial district of New Haven on March 27, 1987. The petitioner alleged that he was confined illegally because of the forfeiture of unearned good time in violation of the procedure set forth in General Statutes § 18-7a (c). The petitioner sought restoration of forfeited good time that had not

---

[2] The respondent restored 225 forfeited days and the petitioner earned an additional thirty-five day reduction for working a job pursuant to General Statutes § 18-98a.

yet been earned and any other legal and equitable relief to which he was entitled. The action was tried to the court, *Fracasse, J.,* which held that good time could not be forfeited before it was earned and ordered recalculation of the petitioner's good time credit in accordance with its holding. The respondent filed a petition for certification of the question of law on October 7, 1987, which the court granted on October 8, 1987. The respondent filed the appeal with the Appellate Court on October 28, 1987, and this court transferred the case to itself on March 10, 1988.

Because the petitioner has been released from incarceration, as a preliminary matter we must address the issue of whether this appeal is moot. We conclude that it is not. Counsel for the respondent suggested at argument that if the respondent prevails in this appeal, the commissioner of correction will seek custody of the petitioner and confine him for the period of time that he would have remained incarcerated had the trial court ruled in favor of the respondent. Furthermore, the issue is capable of repetition, yet evading review, it affects an ongoing program of the state's correctional system, and it could affect this petitioner were he again to face incarceration in the future. See *Delevieleuse* v. *Manson,* 184 Conn. 434, 437, 439 A.2d 1055 (1981); *Taylor* v. *Robinson,* 171 Conn. 691, 694–95, 372 A.2d 102 (1976); *Liistro* v. *Robinson,* 170 Conn. 116, 121–22, 365 A.2d 109 (1976); *Winnick* v. *Reilly,* 100 Conn. 291, 296, 123 A. 440 (1924); cf. *Waterbury Hospital* v. *Connecticut Health Care Associates,* 186 Conn. 247, 440 A.2d 310 (1982).

For the purpose of interpreting General Statutes § 18-7a (c), it is helpful to separate the statute into its two sentences. The first sentence provides that an inmate can "earn a reduction of his sentence as such sentence is served" for "good conduct and obedience to the rules." The second sentence provides for forfeit-

ure of good time credit. It states: "Misconduct or refusal to obey the rules which have been established for the service of his sentence shall subject the prisoner to the loss of all or any portion of such reduction by the commissioner or his designee."

The petitioner asserts that the plain language of General Statutes § 18-7a (c) prohibits the forfeiture of good time credit that has not yet been earned. We agree. "We have consistently held that if a statute is clear and unambiguous, there is no room for construction." *Murray* v. *Lopes,* 205 Conn. 27, 33, 529 A.2d 1302 (1987) (interpreting General Statutes § 18-7a); *Kilpatrick* v. *Board of Education,* 206 Conn. 25, 28, 535 A.2d 1311 (1988); *State* v. *James,* 197 Conn. 358, 363, 497 A.2d 402 (1985); *State* v. *Smith,* 194 Conn. 213, 221, 479 A.2d 814 (1984); *Lerman* v. *Levine,* 14 Conn. App. 402, 409, 541 A.2d 523 (1988); 2A J. Sutherland, Statutory Construction (4th Ed. Sands 1984) §§ 46.01, 46.04. When the statutory language is clear and unambiguous, it is from that source that we deduce the intent of the legislature. *Commissioner* v. *Freedom of Information Commission,* 204 Conn. 609, 620, 529 A.2d 692 (1987); *Rhodes* v. *Hartford,* 201 Conn. 89, 93, 513 A.2d 124 (1986); *Johnson* v. *Manson,* 196 Conn. 309, 316, 493 A.2d 846 (1985), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787, reh. denied, 475 U.S. 1061, 106 S. Ct. 1290, 89 L. Ed. 2d 597 (1986); 2A J. Sutherland, supra, § 48.01. In analyzing the plain language, the terms must be interpreted according to their ordinary meaning unless their context dictates otherwise. *State* v. *Burney,* 189 Conn. 321, 326, 455 A.2d 1335 (1983); *Kilpatrick* v. *Board of Education,* supra; 2A J. Sutherland, supra, § 46.01.

The language and structure of General Statutes § 18-7a (c) is not peculiar and, thus, the terms must be interpreted according to their ordinary meaning. The statute provides that the inmate will receive a sentence

reduction *"as such sentence is served."* (Emphasis added.) Accordingly, the good time credits are calculated into the sentence as a sentence reduction when the inmate earns the credit for good behavior from month to month.[3] If the inmate engages in misconduct, the second sentence of the statute provides that the person can lose "all or any portion of *such* reduction." (Emphasis added.) The logical interpretation of the two sentences in the statute is that the term "such" in the second sentence, as it modifies the term "reduction," refers to the good time sentence "reduction" provided for by the first sentence in the statute. "The word 'such' has been construed as a related adjective referring back to and identifying something previously spoken of and that it naturally, by grammatical usage, refers to the last precedent." *Bahre* v. *Hogbloom,* 162 Conn. 549, 556, 295 A.2d 547 (1972), citing *Estate of Hill,* 214 Cal. App. 2d 812, 820, 29 Cal. Rptr. 814 (1963); *Joseph L. Pohl, Contractor, Inc.* v. *State Highway Commission,* 431 S.W.2d 99, 105 (Mo. 1968); *Sharlin* v. *Neighborhood Theatre, Inc.,* 209 Va. 718, 721, 167 S.E.2d 334 (1969); see *Verrastro* v. *Sivertsen,* 188 Conn. 213, 221 n.7, 448 A.2d 1344 (1982). In addition, rules of construction require that the term "such" be interpreted in the context in which it appears and not solely by its dictionary definition. *Verrastro* v. *Sivertsen,* supra; *Bahre* v. *Hogbloom,* supra.

General Statutes § 18-7a (c) is a self-contained, two sentence provision. The legislature's use of the term "such reduction" in the second sentence logically must refer back to the "reduction" provided for in the first sentence of the subsection.[4] Therefore, according to the plain language of the statute, the commissioner of cor-

---

[3] Inmates receive ten days of good time for each month of good behavior. General Statutes § 18-7a (c).

[4] Counsel for the respondent conceded at oral argument that this is a logical grammatical construction of the provision.

rection cannot diminish an inmate's good time sentence reduction for improper behavior until the inmate earns the reduction as the sentence is served. Prospective forfeiture of unearned good time credit is not permitted under the present statute.

The respondent maintains, as the habeas court held, that the language of General Statutes § 18-7a (c) is ambiguous and he insists that this court must resort to the legislative history to determine the purpose of the statute. As the preceding discussion makes clear, we disagree.[5] The habeas court, however, did discuss the legislative history in its memorandum of decision, so it is instructive for this court to address the issue. The history does not support the respondent's position.

In 1888, General Statutes (1887 Rev.) § 3341 governed the reduction of sentences for good behavior during confinement. The section read, in part: "[F]or each calendar month of actual confinement in the prison, during which time it appears by [the record of conduct] that [the prisoner] has rendered prompt and cheerful obedience to the rules of the prison, five days shall be deducted from his term; provided that any serious act of insubordination or persistent refusal to conform to prison regulations occurring at any time during his confinement in said prison shall subject the prisoner, at the discretion of the warden and board of directors, to the loss of all or any portion of the time

---

[5] The respondent conceded at oral argument that the preceding discussion sets forth a logical, grammatical interpretation of the statutory language. Nevertheless, the respondent asserts that he disagrees with that interpretation as the petitioner proffered it. The respondent's contention does not detract from our position that the statute is clear and unambiguous. "A statute does not become ambiguous solely because the parties disagree as to its meaning." *Commissioner* v. *Freedom of Information Commission*, 204 Conn. 609, 620, 529 A.2d 692 (1987), citing *Harris Data Communications, Inc.* v. *Heffernan*, 183 Conn. 194, 198, 438 A.2d 1178 (1981); *Weingarten* v. *Allstate Ins. Co.*, 169 Conn. 502, 508, 363 A.2d 1055 (1975).

previously gained by good conduct . . . ." Apparently, this scheme created administrative problems for the correction officials in calculating sentence reductions. In 1902, the legislature revised the statute so that month-to-month calculations were not necessary. See General Statutes (1902 Rev.) § 2900.

At some point prior to 1911, the correction officials instituted a system whereby all of an inmate's potential good time, that is, the amount of time that an inmate would earn if that person never misbehaved while serving a sentence, was calculated before the inmate began serving the sentence. Again, it seems that this system was implemented for administrative efficiency. The potential amount of good time was credited against the sentence at the beginning of the term of incarceration, and as a prisoner engaged in misconduct the good time credit was reduced and the sentence was increased up to, but not to exceed, the original term ordered by the court. See, e.g., 7 Report of the Attorney General 117 (1911). The legislative history of General Statutes § 18-7a (c) demonstrates that it was this methodology of "posting" good time credit at the beginning of a term of incarceration that the 1983 amendment was designed to eliminate.[6]

Public Acts 1982, No. 82-379 was entitled "An Act Concerning the Computation of Good Time Credit." The floor debate on this act followed two lines of thought on the purpose of the amendment to General Statutes § 18-7a. One perspective endorsed by Senator Nancy Johnson concerned the psychological effect of good time computation on the inmates. Senator Johnson stated: "All this bill really does is to return the initial concept of good time which was a concept

---

[6] The respondent acknowledges that the legislature intended elimination of "posting" good time prior to service of the sentence. The dispute between the respondent and the petitioner centers on what purpose this change furthered.

of reward. A reward for good behavior. When you deduct the entire amount at the front end of the sentence, then what you revert to is the system of punishment for poor behavior. So that instead of granting good time you actually end up earning penalties for poor behavior." 25 S. Proc., Pt. 12, 1982 Sess., p. 3826. Other legislators rallied behind a different purpose in supporting the bill. This perspective is illustrated by the remarks of Representative Edward Krawiecki. He said: "This is a narrow issue, whether or not we believe someone who has been sentenced to serve a fixed period of time in prison should serve that time and earn good time, not be awarded good time before he walks in the door and serves even one minute of time." 25 H.R. Proc., Pt. 11, 1982 Sess., p. 3545. It appears that supporters such as Representative Krawiecki were concerned with inmates serving less time than the sentencing court thought they deserved. As another example, Senator Howard T. Owens, Jr., supporting the proposed legislation, said: "The Correction Department presently computes good time at the beginning of the prison term based upon the length of the sentence imposed. This bill would require that persons sentenced for offenses committed on or after July one of this year [1982] the good time credit be computed according to time actually served rather than on the sentence imposed." 25 S. Proc., supra, p. 3821.[7]

The respondent asserts that this floor debate indicates that the legislature only intended to modify the

---

[7] During the floor debate, some legislators questioned whether the new methodology would increase the length of sentences. Senator Russell L. Post, Jr., claimed, "I don't believe that it is going to lead to more time in jail unless the judges ignore this law." 25 S. Proc., Pt. 12, 1982 Sess., p. 3831. The respondent, however, notes in his brief that for sentences of one to five years imposed after July 1, 1983, the time served increased by 12½ percent over sentences imposed before that date. For sentences of more than five years the time served increased by 14 percent. "Prison and Jail Overcrowding: A Report to the Governor and Legislature," The Prison and Jail Overcrowding Commission, January 1983, p. 70.

scheme for accruing and posting good time credits and did not intend to modify the forfeiture scheme. The respondent notes that the only difference between General Statutes § 18-7a (b), which applies to sentences ordered between July 1, 1981, and July 1, 1983, and General Statutes § 18-7a (c) was the addition of the phrase "as such sentence is served" in subsection (c). From this, the respondent deduces that there was no change in the forfeiture scheme and, therefore, that prospective forfeiture should be permitted.

Although we agree that " '[a]n amendatory act is presumed not to change the existing law further than is expressly declared or necessarily implied' "; *Doe* v. *Institute of Living, Inc.*, 175 Conn. 49, 63, 392 A.2d 491 (1978), quoting *State* v. *Fahy*, 149 Conn. 577, 582, 183 A.2d 256 (1962); 1A J. Sutherland, Statutory Construction (4th Ed. Sands 1985) § 22.30; we disagree with the respondent's contention that the legislative history supports prospective forfeiture. Under the previous methodology for accruing and forfeiting good time credit, there was no prospective forfeiture. The commissioner of correction, before the inmate began serving the term, calculated all of the potential good time that an inmate could receive during the term of the sentence and deducted it from the sentence. If the inmate behaved improperly, the commissioner restored the deducted days to the sentence. The addition of days for poor behavior was not a prospective forfeiture because the good time "reduction" already had been assessed in favor of the inmate. As suggested by counsel for the petitioner at oral argument, under the prior scheme, because all of the prisoner's good time already had been calculated and awarded, all of an inmate's good time credit was "reachable" from the beginning of the sentence. Under the plain language of the present statute, the good time credit is not "reachable" until it is earned on a month-to-month basis. Therefore, the

absence of a change in the forfeiture language of the statute, and the absence of discussion on forfeiture during the floor debate does not indicate that the legislature intended to permit prospective forfeiture. Because prospective forfeiture was not possible under the prior scheme, a change in the statute that does not affect the forfeiture provision cannot be interpreted to authorize such a procedure.[8]

In further support of his position that prospective forfeiture is permitted under the present statute, the respondent points out that the department of correction issued an administrative directive that stated: "Any inmate held in default of bond or serving sentence who is found guilty of violating the Department of Correction disciplinary code and as a consequence loses good time shall have such loss deducted from any good time already earned. In the event an inmate has not yet earned sufficient good time to satisfy the good time loss, such lost good time shall be deducted from any future good time earned." Department of Correction Administrative Directive 2.6, p. 3a of 13, July 1, 1983. When construing statutes, this court often defers to the judgment of administrative agencies that are in charge of enforcing such statutes, as the respondent suggests. *Schieffelin & Co.* v. *Department of Liquor Control,* 194 Conn. 165, 173–74, 479 A.2d 1191 (1984), citing *Anderson* v. *Ludgin,* 175 Conn. 545, 555, 400

---

[8] In interpreting statutes we presume that the legislature is aware of existing statutes and the accepted interpretation of those statutes by the courts. *State* v. *Dabkowski,* 199 Conn. 193, 201, 506 A.2d 118 (1986); see *Caulkins* v. *Petrillo,* 200 Conn. 713, 718, 513 A.2d 43 (1986); *Murach* v. *Planning & Zoning Commission,* 196 Conn. 192, 200 n.14, 491 A.2d 1058 (1985); 2A J. Sutherland, Statutory Construction (4th Ed. Sands 1984) § 45.12. Also, we presume that the legislature intended some change in the existing statute by its amendment. *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.,* 193 Conn. 208, 231–32, 477 A.2d 988 (1984); 1A J. Sutherland, (4th Ed. Sands 1985) § 22.30. The change effected by this amendment was the change in the methodology for accruing and calculating good time.

A.2d 712 (1978). However, " 'the construction of a statute on an issue that has not previously been subjected to judicial scrutiny is a question of law on which an administrative ruling is not entitled to special deference.' " *Texaco Refining & Marketing Co.* v. *Commissioner,* 202 Conn. 583, 599, 522 A.2d 771 (1987), quoting *Schlumberger Technology Corporation* v. *Dubno,* 202 Conn. 412, 423, 521 A.2d 569 (1987). In this case, as the preceding discussion has illustrated, the department's interpretation of General Statutes § 18-7a (c) is inconsistent with legislative intent as manifested in the statute's plain language. Therefore, this administrative directive is not entitled to deference. See *Beauchesne* v. *Nimmo,* 562 F. Sup. 250, 256 (D. Conn. 1983); *Hartford* v. *Hills,* 408 F. Sup. 889, 900 (D. Conn. 1976).

Finally, the respondent argues that prospective forfeiture is an indispensable device for maintaining order in the correction facilities and, therefore, must be preserved. Prospective forfeiture may be a very important resource for the department of correction. Policy decisions such as this, however, are not within the province of the court.[9] Moreover, "[a] statute should be interpreted according to the policy which the legisla-

---

[9] Prospective forfeiture is not the only penalty that the department has developed. There are a number of disciplinary tools that the commissioner of correction may utilize. They include: "a) Reprimand, probation and/or suspended sentence; b) Loss of privileges; c) Imposition of extra duty assignments during leisure hours; d) Loss of visiting privileges or restrictions of mail privileges other than legal correspondence for limited periods; e) Confinement to living quarters; f) Recommended loss of good time or good time earned while in pre-sentence status; g) Recommended reassignment; h) Monetary fine (all monies collected will be deposited in the inmate welfare fund); i) Punitive segregation; j) Change of housing; k) Recommendation to Classification Committee for review of classification status; *l*) Repayment to facility for property damage or theft to state property,(or payment of laboratory fees, if convicted of alcohol or drug violation)." Department of Correction Administrative Directive 2.6, p. 2 of 15, November 1, 1981.

tion seeks to serve. See 2A [J.] Sutherland, Statutory Construction (4th Ed.) §§ 56.01 to 56.02." *Aaron* v. *Conservation Commission,* 183 Conn. 532, 538, 441 A.2d 30 (1981). We must be guided by the clear language of the statute and not by our determination of what the legislature should have done. See *Kilpatrick* v. *Board of Education,* supra; *Johnson* v. *Manson,* supra.

In summary, the language of General Statutes § 18-7a (c) is clear and unambiguous. Its legislative history is wholly consistent with the meaning that its language conveys. Prospective forfeiture of unearned good time credit is not permitted under the present statute. There is no error.

In this opinion the other justices concurred.