[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal pursuant to Connecticut General Statutes 31-249b from the decision of the Employment Security Appeals Division Board of Review (board) reversing the decision of the Appeals Referee. The board found that plaintiff's former employer did not breach the plaintiff's employment contract such as would provide sufficient cause for plaintiff leaving her job. The board thereby ordered plaintiff ineligible for unemployment compensation benefits.
The board of review found the following facts:
 The record reveals that the claimant [Lydia Bermudez] began working as a full-time parent advocate with the San Juan Tutorial Center on September 6, 1988. The claimant was told at the time of hire that after three months of employment she would qualify for CHN health insurance. This was a material condition in the claimant's decision to accept the job since she had three children and had been dissatisfied with the medical insurance coverage she had received through other jobs.
 The employer, a delegate agency of the Community Renewal Team (CRT), is funded in part by CRT. Staff salaries and benefits are paid by CRT, and the CHN insurance plan was obtained through the CRT group policy. The employer submitted its request to have the claimant insured through CRT in the CHN program at the time of its budget request. In the meantime, it obtained coverage for the claimant beginning in November through the Kaiser program. This was paid for out of the employer's general fund and was the only individual health coverage the employer could obtain. The employer told the claimant that she would obtain CHN coverage in January. CT Page 7606
 The CHN program covers prescriptions and allows participants to utilize their own doctors while Kaiser does not cover prescriptions and requires participants to use the plan's physicians. Additionally, the other three employees working for the employer had dental coverage through Aetna, which the claimant did not receive with the Kaiser program.
 To the employer's surprise, the budget approved by CRT in January did not include medical or dental coverage for the claimant. The employer maintained the claimant's coverage with Kaiser and told the claimant that it would continue its efforts to obtain CHN coverage. The employer was too small an agency to obtain CHN coverage except through CRT. The claimant expressed her dissatisfaction with the Kaiser insurance and stressed the importance of obtaining CHN throughout her employment.
 When the employer realized that the claimant did not have dental coverage, it brought the matter before the advisory board. The Board authorized equivalent dental coverage for the claimant to be funded through the general fund. In May, the claimant's remaining complaints were brought before the advisory board, which agreed to reimburse the claimant for any medical expenses which would have been paid by CHN but were not covered by Kaiser. As a result, the claimant could use the physicians of her choice and would have the same prescription coverage as the other employees. The claimant resigned on June 5, 1989, because the employer failed to provide CHN coverage as promised and because of the employer's denial of a requested leave of absence.
 The record suggests that the claimant may have left her work because the denial of her request for a leave of absence through the summer so she could take her children to Puerto Rico. Although the claimant contends that she was just hired for the school year, the job description submitted with her appeal indicates that the parent advocate is a twelve-month position. Nevertheless, for purposes of this decision, we accept the claimant's statement that, but for her disappointment in not obtaining CHN coverage, she would not have left her employment at the time she did and that she did not quit because of the denial of the leave of absence.
(ROR #15). CT Page 7607
After resigning, claimant filed a claim for unemployment compensation payments with the Administrator of the Unemployment Compensation Act (administrator). On June 13, 1989 the administrator denied the claim in that the claimant "quit suitable work for personal reasons not job connected." (ROR #7). On June 15, 1989 the claimant appealed the administrator's decision to the appeals referee (ROR #9). On July 27, 1989 a hearing was held before the appeals referee which both parties attended (ROR #11). On July 28, 1989 the appeals referee sustained the appeal holding that the failure of the employer to provide CHN insurance coverage was a breach of contract providing claimant with sufficient cause for leaving her job (ROR #11). On August 15, 1989 the employer appealed the referee's decision to the Employment Security Appeals Division Board of Review (board) pursuant to General Statutes 31-249 (ROR #12). On September 29, 1989, after receiving briefs from the parties and reviewing the record and tape recording of the hearing below, the board sustained the employer's appeal.
The board held that there was not a breach of contract such as would provide sufficient cause for claimant's leaving her employment. (ROR #15). The board reasoned that: (1) any deficiencies in the claimant's medical insurance was remedied prior to her resignation, and (2) the claimant should have explored reasonable alternatives prior to leaving her employment. (ROR #15). On October 30, 1989 claimant appeared to the superior court pursuant to General Statutes31-249b. Claimant filed a brief on April 12, 1991. On June 3, 1991 the administrator filed a motion and memorandum of law for judgment dismissing the appeal pursuant to Practice Book 511B and General Statutes 31-249b. This motion is presently before the court from the June 17, 1991 Short Calendar.
SCOPE OF REVIEW
Connecticut General Statute 31-249b provides that any party may appeal to the superior court from a decision made by the board of review. This section states that "any finding of the referee or the board shall be subject to correction only to the extent provided by section 519 of the Connecticut Practice Book." Conn. Gen. Stat. 31-249b. Connecticut Practice Book 519 provides in part:
 The court does not retry the facts or hear evidence. It considers no evidence other than that certified to it by the board, and then for the limited purpose of determining whether the finding should CT Page 7608 be corrected, or whether there was any evidence to support in law the conclusions reached. It cannot review the conclusions of the board when these depend upon the weight of the evidence and the credibility of witnesses.
Connecticut Practice Book 519.
 To the extent that an administrative appeal, pursuant to General Statutes 31-249b, concerns findings of fact, a court is limited to a review of the record certified and filed by the board of review. The court must not retry the facts nor hear evidence. (Citations omitted). If, however, the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts. Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion. (Citations omitted).
 As a general rule, "[t]he application of statutory criteria to determine a claimant's eligibility for unemployment compensation under General Statutes 31-235 and 31-236 involves mixed questions of fact and law in which the expertise of the administrative agency is highly relevant." (Citation omitted).
United Parcel Service, Inc. v. Administrator, 209 Conn. 381,385-86 (1988).
Plaintiff argues on appeal that the Board erred in its decision in that plaintiff's employer breached a condition of employment in not providing CHN insurance coverage and that the Board should not have considered the employer's mitigation. Plaintiff further claims that Agency Regulation 31-236-20(2) specifically exempts a claimant from having to express her dissatisfaction regarding a breach of contract and to seek a remedy through reasonably available means. Plaintiff raises further grounds in her brief, namely, that medical benefits do not constitute wages under Connecticut Labor Regulation31-222-3 as found by the board. Plaintiff asserts that the employer breached a "working condition," and, therefore, the CT Page 7609 board should have looked to Agency Regulation 31-236-22
dealing with work conditions and not to 31-236-20 dealing with wages. This last issue will be addressed first.
 It is the well established practice of this court to "accord great deference to the construction given [a] statute by the agency charged with its enforcement. (citations omitted.) This principle applies with even greater force to an agency's interpretation of its own duly adopted regulations.
Griffin Hospital v. Commission on Hospitals Health Care,200 Conn. 489, 496-97 (1986).
 "`[T]he construction of a statute for regulations on an issue that has not previously been subjected to judicial scrutiny is a question of law on which an administrative ruling is not entitled to special deference." (citations omitted.) Nicholas v. Warren, 209 Conn. 191, 203 (1988).
Connecticut General Statute 31-236 provides in pertinent part:
 An individual shall be ineligible for benefits . . . if, in the opinion of the administrator, he has left suitable work voluntarily and without sufficient cause connected with his work . . . [however,] no individual shall be ineligible for benefits if he leaves suitable work (i) for sufficient cause connected with his work, including leaving as a result of changes in conditions created by his employer . . . .
Conn. Gen. Stat. 31-236 (a)(2)(A); Conn. Agencies Regs.31-236-17 (1986). "In order to establish that an individual left suitable work voluntarily, the Administrator must find that the individual committed the specific intentional act of terminating his own employment." Conn. Agencies Regs.31-236-18 (1986). "In determining whether an individual's reason for leaving suitable work is connected with his work, the Administrator must find that the reason relates to wages, hours or any working conditions which comprise the employment that the individual voluntarily left." Conn. Agencies Regs.31-236-19 (1986).
"Total wages" is defined under the Unemployment CT Page 7610 Compensation Act as "all remuneration for employment, including the cash value of all remuneration paid in any medium other than cash . . . ." Conn. Gen. Stat. 31-222 (b)(1). "Taxable wages" is defined as "total wages excepting
 The amount of any payment excluded from "wages", as defined in Section 3306(b) of the Federal Unemployment Tax Act, that is made to, or on behalf of, an employee under a plan or system established by an employer which makes provision for his employees generally or for a class or classes of his employees, including any amount paid by an employer for insurance or annuities, or into a fund, to provide for any such payment, on amount of (i) retirement, or (ii) sickness or accident disability, or (iii) medical and hospitalization expenses in connection with sickness or accident disability, or (iv) death.
Conn. Gen. Stat. 31-222(b)(1)(E). "Wages" is further defined in the Labor Department Regulations as
 all remuneration for employment, whether paid in money or something other than money. The name by which such remuneration is designated is immaterial. Thus, salaries, commissions on sales or on insurance premiums, fees and bonuses are wages within the meaning of the act if payable by an employer to his employees as compensation for services not excepted by the law. The basis upon which the remuneration is payable, the amount of remuneration and the time of payment are immaterial in determining whether remuneration constitutes "wages." Thus, it may be payable on the basis of piecework, or a percentage of profits; and it may be payable hourly, daily, weekly, monthly or annually. Tips or gratuities and profits may be "wages." The medium in which the remuneration is payable is also immaterial. It may be payable in cash or in something other than cash, such as goods, lodging, food and clothing. Any payments made by an employer to an employee who is on leave of absence for military training are excluded from "wages," if the employer is not legally bound by contract, statute or CT Page 7611 otherwise to make such payments. The term "ages" does not include the amount of any payment by an employer (without deduction from the remuneration of, or other reimbursement from, the employee) of the employee's tax imposed by section 1400 of the Federal Insurance Contributions Act.
Conn. Agencies Regs. 31-222-2.
The issue of whether or not medical insurance is "wages" has not been addressed in Connecticut. By analogy, the Connecticut Supreme Court has held, that a pension is not wages under General Statutes 31-222 but is "Payment by way of compensation for loss of wages." Geremia v. Administrator,146 Conn. 264, 268 (1959); Brannigan v. Administrator,139 Conn. 572, 577 (1953); Kneeland v. Administrator, 138 Conn. 630,632 (1952).
While medical insurance is not compensation for loss of wages, the court holds that the board could reasonably have found that the medical insurance in question is wages under General Statutes 31-222. The appeal cannot be sustained on this ground.
Plaintiff's second ground for appeal is that Agency Regulation 31-236-29(2) exempts a claimant from expressing dissatisfaction regarding wages and seeking a remedy through reasonably available means.
As far as the court can determine, Agency Regulation31-236-20(2) has not to date been subject to judicial scrutiny, and it is thus appropriate that the court should construe that regulatory language.
 "We have consistently held that if a statute is clear and unambiguous, there is no room for construction." (citations omitted.) When the statutory language is clear and unambiguous, it is from the source that we deduce the intent of the legislature. (citations omitted.) In analyzing the plain language, the terms must be interpreted according to their ordinary meaning unless their context dictates otherwise. (citations omitted.)
Nichols v. Warren, 209 Conn. 191, 196 (1988).
Agency Regulation 31-236-20(1)(A) provides that to CT Page 7612 award unemployment compensation "the Administrator must find . . . that the . . . employer . . . breached the original employment agreement." Subsection (2) provides that the administrator must find that, "except in the instance of (1)(A) and (1)(D) above, the individual expressed his dissatisfaction regarding wages to his employer and unsuccessfully sought a remedy through those means reasonably available to him before leaving his employment." (Emphasis added). Conn. Agencies Regs. 341-20(2).
The plain language of Agency Regulation 31-236-20
specifically exempts the claimant, on these facts, from having to express her dissatisfaction and from having to seek "a remedy through those means reasonably available to him, before leaving his employment."
The board argues however, that in cases such as the present where the employer was willing to remedy the situation the board's policy was to require compliance with regulation31-236-20(2).
The labor commissioner adopts regulations pursuant to the Uniform Administrative Procedure Act (UAPA) which establish the criteria for eligibility of unemployment compensation benefits. Conn. Gen. Stat. 31-236e(b). Regulations subject to the UAPA are required to be promulgated with certain formalities. Persico v. Maher, 191 Conn. 384, 405
(1983). Where procedural formalities are not complied with the "regulation" may not be enforced. Id.
 The test [to determine if a "policy" is a "regulation" is] whether "a rule has a substantial impact on the rights and obligations of parties who may appear before the agency in the future." . . . Implicit in this formulation is the recognition that a regulation must be a rule of sufficient generality to impinge substantially on others who will deal with the agency at a future time."
Id. at 401. Here, the court finds that the Board's policy of requiring a claimant to "seek a remedy through reasonably available means" (although specifically exempted from doing so by Conn. Agencies Reg. 31-236-20(2) is in fact a regulation in that it impinges substantially on those dealing with the agency. There is no evidence that the "regulation" was promulgated pursuant to the UAPA. Therefore, although the "regulation" was used by the board in the past; Sacramone v. Parva Industries, case no. 1181-76-BR-931-C-76 (1977); it may CT Page 7613 not be enforced against the claimant. In any event, agency policy may not contradict its own regulations. The appeal may not be dismissed on this ground however, because of the employer's mitigation of its breach of contract.
Claimant's third ground for appeal is that once it was found that the employer breached the employment contract, the board should not have considered the employer's mitigation.
Claimant's employment contract provided that "After being on the job three month [sic] the employee qualifies for medical insurance (CHN)." (ROR #14, p. 5). The board found this to be "a material condition in the claimant's decision to accept the job since she has three children and had been dissatisfied with the medical insurance coverage she had received through other jobs." (ROR #15). The board found that the employer failed to provide CHN coverage but did provide Kaiser Insurance which was not comparable. The board found that the employer could receive funds for insurance coverage only from its principal, CRT, which failed to appropriate such funds. The board found, however, that the employer had attempted to remedy the discrepancy in coverage and had in fact done such when the claimant resigned.
 In determining whether a failure to render or to offer performance is material, the following circumstances are significant:
(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
(e) the extent to which the behavior of the party failing to perform or to offer CT Page 7614 to perform comports with standards of good faith and fair dealing.
Bernstein v. Nemeyer, 213 Conn. 665, 672 n. 8 (1990) quoting RESTATEMENT (SECOND) of CONTRACTS 241. "A determination that a failure is not material means only that it does not have the effect of the nonoccurrence of a condition . . . ." RESTATEMENT (SECOND) of CONTRACTS 241 comment a. "The likelihood that the failure will be cured is . . . a significant circumstance in determining whether it is material (Subsection (d) . . . . [R]easonable assurances of performance given by the other party after his failure [argues against a determination that the failure is material]. Id. at comment e. "The extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing is . . . a significant circumstance in determining whether the failure is material (Subsection (e)). Id. at comment f.
There is no doubt that there is evidence in the record that the employer had cured its failure to provide CHN insurance coverage . . . to the extent notified by claimant of the insurance deficiencies. (ROR #12).
There is evidence that the employer acted in good faith in attempting to cure, once notified of its deficiencies. (ROR #12). Lastly, claimant has been compensated for any deficiencies in insurance coverage as the claimant has made them known to her employer. (ROR #12).
Accordingly, the board was justified in finding that there has not been a material breach of the employment contract. The claimant's appeal is dismissed.
Koletsky, J.